Thomas W. ITIN, Petitioner/Cross–
Respondent,

v.

Bertrand. T. UNGAR, P.C.; and Bertrand
T. Ungar, Respondents/Cross–
Petitioners.

No. 99SC35.

Supreme Court of Colorado,
En Banc.

Nov. 6, 2000.

As Modified on Denial of Rehearing
Nov. 28, 2000.

Myer, Swanson, Adams & Wolf, P.C., Thomas J. Wolf, John M. Anderson, Denver, CO, Attorneys for Petitioner.

Gibson, Dunn & Crutcher L.L.P., Gregory J. Kerwin, Jessica Lee, Birge & Mayes, P.C., Thomas D. Birge, Denver, CO, Attorneys for Respondents.

Justice BENDER delivered the Opinion of the Court.

## I. INTRODUCTION

In this appeal, we hold that a victim seeking civil recovery of treble damages, costs, and fees under the Rights in Stolen Property statute need not prove that the defendant suffered a prior conviction for the crime of theft, robbery, or burglary. A jury in this case found that the defendant, Bertrand T. Ungar, committed acts that constitute the crime of theft when he knowingly exercised control over the funds of plaintiff Thomas W. Itin without authorization and with the specific intent to permanently deprive him of his property. The trial court awarded treble damages, attorney fees, and costs to Itin under the Rights in Stolen Property statute. On appeal, the court of appeals in *Itin v. Ungar*, 978 P.2d 142 (Colo.App.1998), reversed, holding that before Itin may recover under this statute Ungar must first be criminally convicted of theft, robbery, or burglary. We disagree and reverse on this issue.

Secondarily, we also address what information the proponent of evidence must convey to the court in order to preserve a record for appeal when the trial court excludes the proponent's evidence. Here, the trial court precluded impeachment of Itin by Ungar concerning an earlier Securities Exchange Commission (SEC) sanction because it was not relevant. The court of appeals held that because Ungar failed to cite the pertinent rule of evidence, CRE 608(b), as a basis for admissibility, Ungar is now precluded from arguing this issue on appeal. Under our rules of evidence, the proponent of evidence excluded by the trial court need not state a particular rule supporting admission to preserve an evidentiary issue for appeal provided the "substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." CRE 103(a)(2). Here, Ungar both adequately stated, and indicated from the context of the questions asked, that his purpose for questioning Itin about his past SEC sanction was to impeach Itin's credibility. Thus Ungar established an adequate record to raise this evidentiary issue on appeal. Turning to the merits of Ungar's objection, we hold the trial court's exclusion of Ungar's impeachment inquiry was not an abuse of discretion. We therefore affirm the court of appeals on this issue, but we employ different grounds.

Hence, we reverse in part and affirm in part and remand this case to the court of

appeals to address any remaining issues before that court.

## II. FACTS AND PROCEDURAL HISTORY

Itin transferred funds by wire to the trust account of Ungar, who was acting as his escrow agent for the purpose of purchasing stock. Ungar in turn disbursed Itin's funds from the trust account to other companies. Itin claimed that these disbursements were not authorized and that Ungar's actions in transferring the funds permanently deprived Itin of the value of his money. Itin brought suit alleging that in taking his money Ungar committed the crime of theft, and thus sought treble damages, attorney fees, and costs under the Rights in Stolen Property statute, § 18–4–405, 6 C.R.S. (2000).[1] We set forth below only those facts necessary to frame the two issues on this appeal.

Consistent with Itin's claim that Ungar stole his money in violation of the Rights in Stolen Property statute, which Itin called "conversion" in his complaint, the trial court defined conversion[2] in a jury instruction using the elements of criminal theft, which are in pertinent part: "A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization ... and: (a) Intends to deprive the other person permanently of the use or benefit of the thing of value." § 18–4–401(1). Both parties consented to this definition and to placing the label "conversion" on the jury instruction that defined the crime of theft.

The trial court also instructed the jury to apply the civil standard of the burden of proof by requiring Itin to prove his case by a preponderance of the evidence. Ungar neither requested an instruction concerning the criminal burden of proof beyond a reasonable doubt nor objected when the court gave the civil burden of proof instruction.

The jury found Ungar liable to Itin. At a later hearing, the trial court awarded treble damages, attorney fees, and costs to Itin despite Ungar's objections that the Rights in Stolen Property statute did not apply.

Unrelated to the trebling of damages issues, during cross-examination Ungar questioned Itin about his knowledge of private securities actions and specific rules and exemptions of the SEC regarding the sale and registration of restricted securities. On re-cross-examination, Ungar sought to question Itin about his SEC sanction that occurred approximately thirty years earlier. Ungar's counsel advised the court that there existed a finding and conclusion by the SEC that Itin had violated the registration provisions of the federal securities laws.[3] The trial judge stated that she was familiar with Itin's SEC sanction, recalling discussions about this sanction from an earlier mistrial. The defense stated that the reason for this line of questioning was to show that Itin had previously violated SEC provisions under "the exact same statute and regulations that [he talked] about and project[ed] his expertise in" when questioned on cross-examination.

---

1. Section 18–4–405 provides:

   All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property. In any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees; but monetary damages and attorney fees shall not be recoverable from a good-faith purchaser or good-faith holder of the property.

2. Jury Instruction 10, which defined conversion for the jury, reads:

The elements of the tort of conversion are:
1. that the defendants
2. knowingly
   a. exercised control over
   b. anything of value
   c. which was the property of Plaintiff, Thomas W. Itin,
3. without authorization,
4. with intent to permanently deprive Thomas W. Itin of the use or benefit of the thing of value.

3. At oral argument, Ungar's counsel advised this court that Itin's SEC sanction was for a willful violation of SEC regulations, not for a strict liability violation. However, this information is not contained in the record of this case.

Ungar's counsel did not specifically cite CRE 608(b) to support questioning of Itin about this specific instance of misconduct. CRE 608(b) provides that specific instances of a witness's misconduct may be inquired into on cross-examination to attack the witness's credibility for truthfulness if the trial court, in its discretion, determines that the misconduct is probative.

■ The trial court prohibited questioning about the SEC sanction for four reasons: first, the past sanction involved prior unrelated transactions; second, it was too remote; third, to the extent Itin testified about SEC regulations, he did not open the door [4] to this type of credibility attack by his earlier testimony; and fourth, since Itin had not held himself out as an expert in securities law, the stated purpose of undermining Itin's expertise was not a valid theory for admissibility. Thus, the court excluded the evidence as not relevant.

On appeal, the court of appeals held the Rights in Stolen Property statute inapplicable because Ungar had not been convicted of the crime of theft. The court reasoned that because the statute provides recovery only for property taken by the crimes of "theft, robbery, or burglary," a plaintiff seeking treble damages must prove that the defendant was criminally convicted of one of these crimes. That court considered the primarily punitive purpose of this statute and its location within the Criminal Code to hold that "for a plaintiff to recover treble damages, fees, and costs, under § 18–4–405, the original taker must, at a minimum, have been convicted of theft, burglary, or robbery." *See Itin*, 978 P.2d at 144.

Unrelated to this issue, the court of appeals addressed Ungar's claim that the trial court erred by preventing him from eliciting Itin's prior SEC sanction on recross-examination. The court did not consider this argument, holding that because the "[d]efendant[ ] did not raise CRE 608(b) in the trial court as a basis for the admission of the evidence . . . [he] may not assert that rule as a basis of error here." *Id.* at 145.

We granted Itin's petition for certiorari to determine whether the court of appeals erred by denying recovery under the Rights in Stolen Property statute. We also granted Ungar's cross-petition for certiorari to determine if the court of appeals erred in holding that his failure to cite CRE 608(b) at trial prohibited him from arguing on appeal that the trial court abused its discretion by excluding evidence arguably admissible under Rule 608(b).[5] We reverse on the first issue and affirm on the second issue, but we do so based upon different grounds.

## III. TREBLE DAMAGES UNDER THE RIGHTS IN STOLEN PROPERTY STATUTE

■ Itin argues that the court of appeals erred by requiring proof of Ungar's prior criminal conviction before he could recover treble damages against the wrongdoer. We agree.

---

4. The term "opening the door" usually describes the waiver of an objection to the admission of evidence. It often occurs when one party introduces evidence that causes another party to introduce counterproof that would otherwise be inadmissible but for the first party's introduction of the subject matter. *See* 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* 47–48 (2d ed.1994); *Halliburton v. Public Serv. Co.*, 804 P.2d 213, 218 (Colo.App.1990). The concept of "opening the door" represents an effort by courts to prevent one party from creating a misleading impression through the selective presentation of facts by allowing the other party to explain or contradict that impression through evidence that might otherwise be inadmissible. *See People v. Miller*, 890 P.2d 84, 98 (Colo.1995).

5. The precise issues we granted certiorari on are:

1) Whether the court of appeals erred by requiring the "original taker" under C.R.S. 18–4–405 to be criminally convicted of theft, burglary or robbery before an injured party can recover treble damages, attorney fees, and costs pursuant to 18–4–405, 6 C.R.S. (1998). 2) Whether the court of appeals erred in holding that Ungar could not argue on appeal that the district court abused its discretion under C.R.E. 608(b) because Ungar failed to cite that particular rule to the trial court at the time the trial court excluded cross-examination of Itin about his SEC sanction.

## A.

We begin our analysis by examining the wording of the statute to give effect to legislative intent. *See Farmers Ins. Exch. v. Bill Boom, Inc.,* 961 P.2d 465, 469 (Colo. 1998). "Words and phrases used in statutes are to be interpreted according to their generally accepted meaning." *People v. Hickman,* 988 P.2d 628, 634 (Colo.1999).

The Rights in Stolen Property statute provides that the owner of property taken by theft, robbery or burglary may sue the taker and recover treble damages, fees, and costs:

> All property obtained by theft, robbery, or burglary shall be restored to the owner ... [who] may maintain an action ... against the taker thereof.... In any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees.

§ 18–4–405.

The words "convict," "conviction," or "convicted" are not found in this statute. We find this omission significant. The General Assembly could have included words providing that recovery of civil damages is predicated upon proof of a criminal conviction. Failure to do so reflects a legislative intent not to require a criminal conviction.

The statute does not itself define "theft, robbery, and burglary." Accordingly, because the Rights in Stolen Property statute appears in the Criminal Code, which we read *in pari materia,* we define these terms in context with, and with regard to, their intended meaning within the statutory scheme. *See Walgreen Co. v. Charnes,* 819 P.2d 1039, 1043 n. 6 (Colo.1991)("*In pari materia* is a rule of statutory construction which requires that statutes relating to the same subject matter be construed together in order to gather the legislature's intent from the whole of the enactments."). Section 18–4–401 defines theft, the pertinent crime in this case, and contains the elements that must be proved to

establish a defendant's liability for the crime.[6] Thus, it appears from an analysis of the wording of the statute that the General Assembly intended for this statute to require proof of the commission of a criminal act, but not proof of a prior conviction of the defendant as a condition for recovery of treble damages.

Using similar statutory construction, a different panel of the court of appeals reached this same conclusion in a more recent case. In *Chryar v. Wolf,* that panel reasoned, "Significantly, nowhere in § 18–4–405 .does .the General Assembly condition a damage award upon a showing of a 'conviction' by the taker; indeed, the words 'convict,' 'convicted,' and 'conviction' do not even appear in the statute." No. 99CA1360, slip op. at 8, —— P.3d ——, 2000 WL 1289485 (Colo.App. Sept. 14, 2000).

Additionally, we note that the statute title, "Rights in Stolen Property," appears to refer to the rights of the owner in the property that was stolen. These rights include the right to recover the stolen property even if it is sold to a bona fide purchaser. *See* § 18–4–405 ("All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property."). Moreover, the owner has a right to "maintain an action ... against the taker" of the stolen property and "may recover two hundred dollars or three times the amount of the actual damages sustained by him." *Id.* Thus, the statute provides for a private civil remedy enabling the owner of stolen property to recover the property, even if the possessor of the property is a taker in good faith, and to recover treble damages, costs, and fees if the taker commits one of the following criminal acts: theft, robbery, or burglary.

The Rights in Stolen Property statute's provision of a private remedy enabling the property owner to recover the stolen property appears inconsistent with the requirement that the taker must first be convicted of a crime. This inconsistency is evident from

---

6. *See also* §§ 18–4–203 (defining the crime of second degree burglary), –301 (defining the crime of robbery).

the fact that the stolen property would have been returned already to the owner in the event that the taker was prosecuted by the government and convicted for the crime of theft.

As discussed, placement within the Criminal Code requires that the owner of the property must prove that the taker or the defendant committed *acts* constituting at least one of the statutory crimes. With respect to the crime of theft claimed here, all of its statutory elements must be proved, including the two culpable mental states: (1) that the defendant knowingly obtained control over the owner's property without authorization and (2) that he or she did so with the specific intent to permanently deprive the owner of the benefit of property. *See* § 18–4–401(1). Only upon proof of the criminal act of theft may the owner recover treble damages, fees, and costs.

Given the omission of the words requiring proof of a conviction and given the focus on the rights of owners whose property has been taken by theft, robbery, or burglary, we conclude that the General Assembly intended the Rights in Stolen Property statute to provide an owner with a private remedy against the taker that requires proof of a specified criminal act but not proof of a prior criminal conviction to recover treble damages, fees, and costs.

Although we need not resort to an analysis of legislative history since this statute on its face does not require proof of a prior criminal conviction,[7] we review this history and confirm our statutory analysis.

In 1973, the General Assembly amended the Rights in Stolen Property statute to include the remedy of treble damages in response to testimony from witnesses in the trucking industry who testified that a treble damages recovery would allow trucking companies to recoup losses due to employee theft in those cases where the government failed to bring criminal charges. *See* ch. 154, sec. 1, § 40–4–405, 1973 Colo. Sess. Laws 536 (amending the statute); *Colorado Rights in Stolen Property: Hearing on S. 256 Before the Senate Judiciary Comm.*, 49th General Assembly, 1st Reg. Sess. (April 10, 1973); *Colorado Rights in Stolen Property: Hearing on S. 256 Before the House Judiciary Comm.*, 49th General Assembly, 1st Reg. Sess. (May 1, 1973).[8] Although the legislative history of this amendment is inaudible in part and the legislators said little in direct response to the testimony, we conclude that interpreting this statute to permit recovery "only against those already brought to justice," i.e., those criminally convicted, would be inconsistent with the testimony presented seeking effective private enforcement actions for property owners victimized by theft and would be inconsistent with the language authorizing recovery of treble damages, costs, and fees. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 493, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)(holding that the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (2000), which, like the Rights in Stolen Property statute, provides a civil remedy to victims of criminal acts, does not predicate recovery on prior convictions of defendants in part because the purpose of RICO is to

---

7. *See Farmers Ins. Exch.*, 961 P.2d at 469 ("If the legislative intent is immediately conveyed by the commonly understood and accepted meaning of the statutory language, we need look no further.").

8. Although Ungar concedes that problems of recovering losses for thefts in the trucking industry were the impetus for the treble damages amendment to the Rights in Stolen Property statute, he argues that questions by committee members such as "How would the rightful owner in any case determine whether or not he was dealing with property which was obtained by theft, robbery, or burglary without first convicting the burglar, the thief or the robber?" indicate that the legislators intended that only criminally convicted thieves should be liable for treble dam-

ages. Our review of the legislative history indicates that comments relied on by Ungar refer to concerns about the applicability of the statute to good faith purchasers. *See Colorado Rights in Stolen Property: Hearing on S. 256 Before the Senate Judiciary Comm.*, 49th General Assembly, 1st Reg. Sess. (April 10, 1973); *Colorado Rights in Stolen Property: Hearing on S. 256 Before the House Judiciary Comm.*, 49th General Assembly, 1st Reg. Sess. (May 1, 1973). The 1973 amendment reflects these concerns by providing, "treble damages and attorney's fees shall *not* be recoverable from a good faith purchaser or good faith holder of the property." *See* ch. 154, sec. 1, § 40–4–105, 1973 Colo. Sess. Laws 536 (emphasis added).

provide a remedy for injured plaintiffs to act as private attorneys general).

Ungar advances other arguments to support the court of appeals' holding that the statute requires proof of a prior criminal conviction. We find them unpersuasive. He argues that the General Assembly's decision to place this statute in the Criminal Code means that a prior conviction of the defendant is required under the Criminal Code before a plaintiff may recover treble damages. However, as discussed, we reason that the placement of this statute in the Criminal Code indicates that the criminal acts of theft, robbery, and burglary must be proved using the elements of these crimes as defined in the Code and that the omission of the word conviction, or words to that effect, indicates the legislative intent not to include a conviction requirement.

In addition to the placement in the Criminal Code, Ungar points to the court of appeals' reliance upon our statement in a dissolution case that the statute has "primarily a punitive, rather than a remedial, purpose" as support for holding that this statute requires proof of a criminal conviction. *See In re Marriage of Allen,* 724 P.2d 651, 656 (Colo. 1986). However, this statement did not form the basis for our holding in *In re Allen* that the Rights in Stolen Property statute does not authorize the imposition of a constructive trust on property awarded under a decree of dissolution. *See id.* Thus, our statement in that case regarding the punitive purpose of the Rights in Stolen Property statute is *obiter dictum* and, as such, is unpersuasive as

precedent or as a basis for us now to read into the statute the word "conviction." [9]

■ We conclude that neither the wording of the statute nor its legislative history leads us to construe the Rights in Stolen Property statute as requiring proof of a prior criminal conviction of the defendant. Accordingly, we hold that because the jury determined that Ungar committed acts of theft as defined by the Criminal Code, Itin may recover treble damages, attorney fees, and costs under the Rights in Stolen Property statute.

### B.

■ Alternatively, Ungar argues that the trial court committed reversible error when it instructed the jury concerning this statute. He contends that the Rights in Stolen Property statute requires that the defendant be found liable for the crimes of "theft, robbery, or burglary" and not "conversion" [10] as the jury instruction stated. In addition, he argues that the jury should have been instructed to apply the criminal standard of proof, beyond a reasonable doubt, rather than the civil burden of proof by a preponderance of the evidence. When the trial court tendered these instructions to the jury, Ungar consented to labeling the elements of the crime of theft as "conversion." In addition, Ungar also failed to object to the civil burden of proof instruction. Failure to object to the trial court's instructions and to call the trial court's attention to errors ordinarily operates as a waiver of an objection to those instructions. *See Ross v. Colorado Nat'l Bank,* 170 Colo. 436, 443, 463 P.2d 882, 885 (1969).[11] We see no basis in this record

9. However, we note that we have rejected the argument that the statutory remedy of treble damages requires the higher criminal burden of proof beyond a reasonable doubt, rather than the civil standard of preponderance, even when the trebling of damages may in part have a punitive impact upon the defendant. *See Farmers Group, Inc. v. Williams,* 805 P.2d 419, 427 (Colo.1991). In *Farmers,* we held that the civil statutory remedy of trebling damages for the tort claim of bad faith breach of contract against an insurer by an insured is distinctly different from exemplary damages and therefore the requirement contained in the exemplary damages statute implicating the criminal burden of proof, under section 13–25–127(2), does not apply. *See id.*

10. Common-law conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Byron v. York Inv. Co.,* 133 Colo. 418, 424, 296 P.2d 742, 745 (1956). It is distinct from the crime of theft in that it does not require that a wrongdoer act with the specific intent to permanently deprive the owner of his property. In other words, a good faith purchaser who acts without the knowledge that property has been stolen may be liable for conversion, but may not possess the specific intent to permanently deprive and thus may not be liable for a crime of theft.

11. *See* C.R.C.P. 51 (providing in part, "[a]ll instructions shall be submitted to the parties, who

justifying an exception to this general rule requiring contemporaneous objections to jury instructions for preservation of issues on appeal and thus do not consider either issue.[12]

## IV. EXCLUSION OF EVIDENCE IN CROSS EXAMINATION

■ Ungar argues that the court of appeals erred by holding that he did not preserve for appeal the evidentiary question of whether Itin's SEC sanction should have been admitted on cross-examination under CRE 608(b). This rule of evidence provides that "specific instances of the conduct of a witness, for the purpose of attacking ... his credibility, ... may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness." CRE 608(b).

■ A proponent of evidence may predicate error on a trial court ruling that excludes evidence if the error affects a substantial right of the party, see CRE 103(a), and if "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." CRE 103(a)(2)[13]. An offer of proof

must sufficiently inform the court of the nature and substance of the proposed evidence both to enable the trial court to exercise its discretion under the rules of evidence and to provide a basis for appellate review. See Lanari v. People, 827 P.2d 495, 503 (Colo. 1992).

Here, Ungar sought to question Itin on cross-examination about his SEC sanction in part because the sanction involved a violation of the same statutes in which Itin claimed expertise when questioned on cross-examination.[14] This SEC sanction might establish that Itin misrepresented the extent of his knowledge about SEC rules to the jury and thus was at least arguably relevant to impeach his credibility. In addition, the SEC sanction involved a finding and conclusion that Itin violated a federal securities law, and as such, it arguably could constitute a specific instance of misconduct that could be probative to establish that Itin possessed an untruthful character. See United States v. Girdner, 773 F.2d 257, 261 (10th Cir.1985)(holding that the trial court did not abuse its discretion by finding witness's previous falsehoods and deceitful actions were probative for truthfulness under Fed.R.Evid. 608(b)).

shall make all objections thereto before they are given to the jury").

12. Although we do not reach these issues today, we reiterate that a plaintiff must prove the defendant took the property by theft, robbery, or burglary and not conversion. Here, the instruction labeled the crime "conversion" rather than appropriately labeling it "theft." This mislabeling was erroneous but appears harmless because the instructions contained complete elements of the crime of theft including the required specific intent.

Further, we note that a majority of federal circuits have adopted a preponderance of the evidence standard of proof in RICO actions, which also provide civil remedies based on violations of criminal offenses. See Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1560 (1st Cir.1994); Cullen v. Margiotta, 811 F.2d 698, 731–732 (2d Cir.1987); United States v. Local 560 of the Int'l Bhd. of Teamsters, 780 F.2d 267, 279 n. 12 (3d Cir.1985); Armco Indus. Credit Corp. v. SLT Warehouse Co., 782 F.2d 475, 481 (5th Cir.1986); Fleischhauer v. Feltner, 879 F.2d 1290, 1296 (6th Cir.1989); Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1303 (7th Cir.1987); Bieter Co. v. Blomquist, 987 F.2d 1319, 1321 (8th

Cir.1993); Wilcox v. First Interstate Bank, 815 F.2d 522, 531 (9th Cir.1987). In addition, the Supreme Court, while not expressly reaching this issue, appears to approve of the preponderance of evidence standard. See Sedima, 473 U.S. at 491, 105 S.Ct. 3292.

13. Unlike evidence that is excluded, when the trial court admits evidence error may be predicated only if its admission affects a substantial right of the party, see CRE 103(a), and "a timely objection ... appears of record stating the specific ground of objection, if the specific ground was not apparent from the context." CRE 103(a)(1); see also Hart v. Schwab, 990 P.2d 1131, 1135 (Colo.App.1999).

14. Technically, Ungar did not seek to prove Itin's SEC sanction by extrinsic evidence, which CRE 608(b) prohibits. See CRE 608(b) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility ... may not be proved by extrinsic evidence."). Rather, Ungar sought in the words of the rule to "inquire" of Itin, the witness, whether he had been sanctioned by the SEC. See People v. Pratt, 759 P.2d 676, 691 (Colo.1988).

Our review of the record reveals that the trial court knew the details of Itin's SEC sanction from the earlier trial. The trial court excluded questions pertaining to Itin's past SEC sanction not only because Itin failed to open the door by his testimony but also because the evidentiary value of this sanction was unrelated to this case and was too remote in time. Both of these latter reasons given by the trial court support the court's finding that the SEC sanction lacks probative value to prove Itin's untruthful character. Ungar's offer of proof and the context of the questioning indicated that the evidentiary purpose of the SEC sanction was to attack Itin's credibility. We conclude that the trial court possessed sufficient information about the nature and substance of this inquiry to exercise its discretion to admit or exclude it under CRE 608(b). Hence, we find that the record provides an adequate basis for appellate review and that Ungar preserved this issue for appeal.

Having determined that we may consider Ungar's objection to the exclusion of this impeachment inquiry, we hold that the trial judge did not abuse her discretion by prohibiting questions concerning Itin's thirty-year old SEC sanction. *See Pratt*, 759 P.2d at 689 (noting that a trial court's discretion under CRE 608(b) will not be disturbed on appellate review absent an abuse of discretion). We point out that the occasion of the misconduct, here approximately thirty years before the witness testified, lends persuasive support to our conclusion that the trial judge did not abuse her discretion. *See generally* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 608.22[2][c][iv].

Accordingly, we affirm the court of appeals on this issue on different grounds.

## V. CONCLUSION

For the reasons stated, we reverse the court of appeals' judgment in part and affirm in part, but do so based upon different grounds. We remand the case to the court of appeals for further proceedings to address any remaining issues before that court.

Justice RICE does not participate.