**Ronald B. JONES, Plaintiff–Appellee,**

v.

**STEVINSON'S GOLDEN FORD,
Defendant–Appellant.**

No. 99CA1634.

Colorado Court of Appeals,
Div. V.

April 12, 2001.

Certiorari Denied Nov. 19, 2001.

Law Offices of Charles W. Hemphill, Charles W. Hemphill, Littleton, CO, for Plaintiff–Appellee.

Holland & Hart, LLP, Gregory A. Eurich, Brian M. Mumaugh, Teri Lowery, Denver, CO, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

In this action arising out of an employment dispute, defendant, Stevinson's Golden Ford (employer), appeals the judgment entered on a jury verdict finding it liable to plaintiff, Ronald B. Jones (employee), for wrongful termination in violation of public policy. We affirm.

## I.

Employee was a certified master mechanic with approximately thirty years experience. Employer purchased an auto repair business and hired employee in February 1997. In April 1998, employer hired the service department manager (manager) who became employee's supervisor. Employee was terminated in August 1998.

At trial, employee's evidence was that the manager had terminated employee because he had refused to "upsell" fuel injector flushes on every vehicle that he serviced. The term, "upselling," as used in the auto repair industry, refers to the technique of recommending services not requested by the customer.

The purpose of a fuel injector flush is to clean out deposits that may accumulate in a vehicle's fuel injectors. It involves pouring a twelve-ounce can of injection cleaner into the end of the injector and running the engine for about ten minutes.

There is apparently a dispute within the industry regarding the value of fuel injector flushes. Employer's previous service department manager testified that flushes were unnecessary on any vehicle. An engineer from the Ford Motor Company testified that Ford does not recommend fuel injector flushes as preventive maintenance or at regularly scheduled intervals. The engineer also testified that in 1989, Ford began to use deposit resistant injectors in some of its vehicles that reduce the amount of fuel accumulation in a vehicle's injectors.

However, the manager testified that such flushes should be recommended as preventive maintenance for certain vehicles and at certain mileage points beginning at fifteen thousand miles or every fifteen months. An employee of the company that sells fuel injection products also testified that the flushes should be recommended as preventive maintenance.

There was a conflict in the evidence whether the manager had directed employee to upsell fuel injection flushes on all vehicles and whether employee's refusal to upsell was the basis for his termination.

According to employee, the manager explicitly told him on three separate occasions that he must sell injection flushes and tune-ups on "every vehicle that goes through your stall" and had indicated that upselling should be done regardless of the vehicle's model year or mileage. Employee testified that on two of these occasions, he had turned his back on the manager and had walked away without saying anything. There was no testimony concerning employee's response on the third occasion.

Employee explained that he had refused to upsell fuel injector flushes on every vehicle on which he had worked because this service

was unnecessary in all circumstances, and he believed it would be illegal. He testified that he performed fuel injector flushes only when he thought they were necessary or when the customer requested the service.

The manager admitted that he and employee did not get along, but he insisted that he had terminated employee because of customer dissatisfaction with employee's work, insubordination, and employee's refusal to work on one particular vehicle, as well as employee's refusal to upsell any services.

The manager denied directing employee to upsell injector flushes on every vehicle and testified that such a directive would have been improper. He stated that he had directed employee to upsell fuel injector flushes only on vehicles at certain mileage intervals as preventive maintenance.

Employer moved for a directed verdict at the end of employee's case and again at the conclusion of all the evidence. Following the jury verdict in favor of employee, employer moved for judgment notwithstanding the verdict based on the same grounds. The trial court denied all three motions and entered judgment on the verdict.

## II.

Employer contends the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict. According to employer, employee failed to prove all of the elements of a claim for wrongful discharge in violation of public policy. We are not persuaded.

■ Directed verdicts are not favored and are appropriate only where the evidence compels the conclusion that reasonable persons could not disagree and that no evidence, or legitimate inference arising therefrom, has been presented on which the jury's verdict could be sustained. *Lawrence v. Taylor,* 8 P.3d 607 (Colo.App.2000).

■ Likewise, judgment notwithstanding the verdict can be entered only if the evidence, viewed in a light most favorable to the nonmoving party, is such that no reasonable person could reach the same conclusion as the jury. *Klein v. State Farm Mutual Auto-*

*mobile Insurance Co.,* 948 P.2d 43 (Colo.App. 1997).

■ In the absence of an explicit contract to the contrary, every employment is presumed to be "at-will." The at-will employment doctrine provides that both an employer and an at-will employee may terminate the employment relationship without being subject to legal liability for the termination. *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100 (Colo.1992).

One exception to the at-will employment doctrine is the public policy exception based on wrongful discharge. *See Coors Brewing Co. v. Floyd,* 978 P.2d 663 (Colo.1999); *Martin Marietta Corp. v. Lorenz, supra; Hoyt v. Target Stores,* 981 P.2d 188 (Colo.App.1998).

■ An at-will employee establishes a prima facie case of wrongful discharge if the employee shows that: (1) the employer directed the employee to perform an illegal act as part of the employee's work-related duties; (2) the action directed by the employer would violate a statute or clearly expressed public policy; (3) the employee was terminated as a result of refusing to perform the illegal act; and (4) the employer was aware or should have been aware that the employee's refusal was based upon the employee's reasonable belief that the act was illegal. *Coors Brewing Co. v. Floyd, supra.*

Employer here maintains that these four elements were not satisfied at trial. We address and reject each contention in turn.

### A.

■ Employer first contends there was no evidence that it directed employee to perform an illegal act. Employer's position is that its recommendation of a fuel injector flush as a routine preventive maintenance service was not an illegal act as a matter of law. We disagree.

The trial court instructed the jury that employer's actions could constitute an illegal act under the Motor Vehicle Repair Act, § 42–9–101, et seq., C.R.S.2000, or the Colorado Consumer Protection Act, § 6–1–101, et seq., C.R.S.2000.

Under § 42–9–111(1)(b), C.R.S.2000, it is unlawful for a motor vehicle facility or its employee to represent that repairs are necessary when such is not a fact.

"Necessary" means that the repairs are essential to a desired or projected end as stated by the customer or indispensable to avoid loss or damage. Section 42–9–102(4), C.R.S.2000.

Section 6–1–105(1)(e), C.R.S.2000, makes it unlawful for a person in the course of his or her occupation knowingly to make a false representation as to the uses or benefits of services.

Applying those principles and viewing the facts in the light most favorable to the verdict, there was evidence—if believed—that the manager directed employee to upsell fuel injector flushes on every vehicle on which he worked. While there was also conflicting testimony concerning the benefit of fuel injector flushes, there was no evidence that the service should be performed on *all* vehicles.

On the contrary, the manager conceded that it would have been improper to recommend the service on vehicles under fifteen thousand miles. Thus, if employee had followed the manager's directive as employee described it, he would have violated § 42–9–111(1)(b), because fuel injector flushes were not essential or indispensable to avoid loss or damage on every vehicle.

Employee also testified that he knew not all vehicles that came through his stall needed a fuel injector flush. Therefore, if he had followed the manager's directive, employee would have also violated § 6–1–105(e), because he would have had to make false representations regarding the benefits of fuel injector flushes to vehicle owners, knowing that their vehicles did not need the service.

We therefore conclude there was a reasonable basis for the jury's finding that employer directed employee to perform an illegal act as part of employee's work-related duties.

### B.

■ Employer also contends its conduct did not implicate a public policy. Again, we disagree.

■ Claims based on wrongful termination in violation of public policy are grounded in the idea that an employer should be prohibited from discharging an employee for reasons that contravene widely accepted and substantial public policies. *Crawford Rehabilitation Services, Inc. v. Weissman,* 938 P.2d 540 (Colo.1997).

■ Although a claim based on wrongful termination in violation of public policy is not subject to precise definition, the claim must be based on conduct by an employer that affects society at large rather than a purely personal or proprietary interest of the parties. The cause of action was designed to prohibit conduct by employers that strikes at the heart of an employee's social rights, duties, and responsibilities as a citizen, as well as conduct that leads to an outrageous result clearly inconsistent with a stated public policy. *See Flores v. American Pharmaceutical Services, Inc.,* 994 P.2d 455 (Colo. App.1999).

■ In construing a statute, courts must ascertain and give effect to the intent of the General Assembly. *In re Marriage of Hamby,* 954 P.2d 635 (Colo.App.1997).

The broad legislative purpose of the Colorado Consumer Protection Act is to provide prompt, economical, and readily available remedies against consumer fraud. *Western Food Plan, Inc. v. District Court,* 198 Colo. 251, 598 P.2d 1038 (1979).

Similarly, in the legislative hearings on S.B. 367, which became § 42–9–111 of the Motor Vehicle Repair Act, the General Assembly specifically noted the need to protect consumers. *See* Hearing on S.B. 367 before Senate State Affairs Committee, 51st General Assembly, First Session (March 14, 1977)(Senator Meiklejohn, one of the bill's authors, stated that S.B. 367 is "necessary consumer legislation" that "protects the person who goes to some of these unscrupulous garages").

Auto repair shops and their employees possess special knowledge and expertise that most citizens do not possess and upon which most citizens must rely. Therefore, most citizens place reasonable trust in auto repair

shops and rely on professionals there to identify and remedy real problems affecting the safety of their vehicles.

Viewing the facts in a light most favorable to the verdict, we conclude there was evidence here that employer's conduct adversely affected society at large and violated public policy.

Because there was evidence that employer betrayed that trust by directing employee to recommend unnecessary services to customers, we reject employer's argument that its actions did not implicate a public policy.

### C.

■ Employer next contends there was insufficient evidence that it terminated employee as a result of employee's refusal to perform an illegal act. Employer claims that employee failed explicitly to state his objection to the alleged illegal act and that such a statement by employee was required. We disagree.

In *Rocky Mountain Hospital & Medical Service v. Mariani*, 916 P.2d 519 (Colo.1996), the supreme court rejected an employer's argument that a terminated employee had failed to prove the element of refusal. The employee there had objected to the employer's various accounting practices, but did not expressly refuse to undertake them. The court focused on the meaning of "refusal" and stated that:

> "[R]efuse" is defined as: 1. to avoid or shun; 2. to decline to accept; and 3. to show or express a positive unwillingness to do or comply with. Websters [sic] Third New International Dictionary 1910 (1961). Clearly, if [the employee] objected to the accounting practices and did not participate in them or by inaction declined to undertake them, she satisfied the refusal component of [*Martin Marietta Corp. v. Lorenz, supra*]. Refusal is not limited to the verbal expression of refusal, but can consist of inaction as well.

*Rocky Mountain Hospital & Medical Service v. Mariani, supra* (fn.12).

Contrary to employer's contention, we do not read *Mariani* to require that an employee must prove not only that the employer's termination resulted from the employee's refusal to perform an illegal act, but also that the employee expressly objected to the employer. Under *Mariani*, refusal can be demonstrated by inaction.

Here, there was evidence from which the jury could reasonably have concluded that employee was fired because of his refusal to upsell fuel injector flushes on every vehicle. Employee testified that while he did not say anything specific to employer, he simply did not sell unnecessary fuel injector flushes. There also was evidence that the manager was aware of this inaction because he confronted employee three times and directed employee to upsell the services, and on two of these occasions, employee turned his back and walked away from the manager.

Accordingly, we conclude there was sufficient evidence of employee's refusal to perform illegal acts.

### D.

■ We also reject employer's contention that there was no evidence it knew or should have known employee believed upselling fuel injection service was illegal, which is the fourth element of a claim for wrongful termination in violation of public policy. *See Coors Brewing Co. v. Floyd, supra.*

■ The purpose of the fourth requirement is to: (1) provide an employer with a fair opportunity to distinguish between an employee concerned about the legality of particular conduct directed by the employer and an employee who refuses to engage in such conduct out of insubordination or some improper motive; and (2) provide the employer with fair notice prior to the discharge decision of circumstances supportive of the employee's reasonable belief that the action directed by the employer would be illegal or contrary to the employee's duty as a citizen. *Martin Marietta Corp. v. Lorenz, supra.*

Here, there was evidence that: (1) the manager knowingly acted improperly by directing employee to upsell fuel injector flushes on every vehicle; (2) employee performed fuel injector flushes in the limited circumstances when there was an actual need or

when the customer requested the service, but did not upsell the service on every vehicle; and (3) employee turned his back and walked away from the manager on two of the occasions when the manager demanded that he upsell the service on every vehicle.

Accordingly, there was a reasonable basis for the jury's finding that employer should have known employee's refusal was based upon his reasonable belief that employer's directive was illegal. *See Coors Brewing Co. v. Floyd, supra.*

Judgment affirmed.

TAUBMAN and ROY, JJ., concur.