Allen M. ZIEGLER, Plaintiff,

v.

INABATA OF AMERICA, INC., Technical Sourcing, Inc., and Resonance, Inc., Larry Kolb, Joe Zhou and TSI Holdings International, Inc., Defendants.

No. CIV.A.01–K–0270.

United States District Court, D. Colorado.

April 12, 2004.

Samuel M. Ventola, Esq., Rothgerber, Johnson & Lyons, LLP, Denver, CO, for Plaintiff.

Edward T. Lyons, Jr., Esq., Thomas J. Burke, Jr., Esq., Jones & Keller, PC, Denver, CO, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KANE, District Judge.

### I. Introduction

In this action Plaintiff Allen Ziegler ("Ziegler") claims Defendants are liable for wrongful discharge in violation of public policy, interference with contractual relations between Ziegler and Resonance, the company for which he served as President, and breach of fiduciary duty. In addition, Ziegler asserts claims relating to his stock ownership in Resonance including civil theft, conversion, breach of contract, fraudulent misrepresentation, and negligent misrepresentation. Ziegler's final claims include piercing the corporate veil and joint liability/civil conspiracy.

The matter is before me on Defendants' Motion for Summary Judgment as to all of Ziegler's claims.[1]

### II. Background

Ziegler was recruited by Nobakani Taneya ("Taneya"), the President of Inabata, and Joe Zhou ("Zhou"), the President of TSI, to form Resonance, Inc. ("Resonance"), a corporation that would sell the machinery and chemicals needed to purify water in the United States, China and Japan. Second Am. Compl. ¶¶ 11–13. Ziegler became the President of Resonance and a ten percent owner of the new corporation. *Id.* ¶ 14.

As president of Resonance, Ziegler secured an exclusive dealership in the United States to sell the patented water sodium chlorate purifiers of Akzo–Nobel, the purifiers' manufacturer. *Id.* ¶ 15. Resonance determined that the sodium chlorate process could be used in China; however, Taneya and Zhou did not want to pay Akzo–Nobel the cost of importing its generator to China. *Id.* ¶ 16. Instead, Taneya and Zhou reached an agreement with Chinese authorities whereby Resonance would copy illegally Akzo–Nobel's patented equipment and manufacture the equipment itself in China. *Id.* Zhou directed Ziegler to duplicate the patented process without paying Akzo–Nobel and he refused. *Id.* ¶ 17. Because Ziegler would not comply and in order to take Ziegler's ten percent interest in Resonance, Zhou, Taneya and Kolb terminated Ziegler. *Id.* ¶¶ 19, 20, 33

Ziegler's Second Amended Complaint includes ten claims for relief: (1) wrongful discharge from Resonance in violation of public policy; (2) interference with contractual obligations and economic advan-

---

1. Ziegler's Motion for Summary Judgment directed to Defendants' counterclaims will be addressed in a separate order.

tage; (3) civil theft; (4) conversion; (5) breach of contract; (6) breach of fiduciary duty; (7) fraudulent misrepresentation; (8) negligent misrepresentation; (9) piercing the corporate veil; and (10) joint liability.

### III. Summary Judgment Standards

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be entered against a party who fails to establish sufficiently an essential element in that party's case, one on which the plaintiff bears the burden of proof at trial. *See Price v. Public Serv. Co. of Colo.*, 1 F.Supp.2d 1216, 1221 (D.Colo.1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

A primary objective of summary judgment is to dispose of factually unsupported claims, and a court should interpret Rule 56(c) in a manner that allows it to accomplish this purpose. *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548. Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Price*, 1 F.Supp.2d at 1222. Upon such a showing, the burden then shifts to the non-moving party. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Further, the non-moving party may not rest on the allegations contained in the complaint, but instead must respond with specific facts showing the existence of a genuine factual issue. *See id.*; Fed.R.Civ.P. 56(e). "At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial." *See id.* (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505);

*see also Rich v. Bent County*, 122 F.Supp.2d 1175, 1179 (D.Colo.2000).

Additionally, when determining the adequacy of the non-moving party's opposition to a summary judgment motion, a decision should be based on whether reasonable jurors could find, by a preponderance of the evidence, the non-moving party is entitled to a verdict. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505 If in viewing all of the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party, summary judgment is precluded. *Id.* at 252, 106 S.Ct. 2505.

### IV. Discussion

This court is exercising its diversity jurisdiction pursuant to 28 U.S.C. § 1332. Under COLO. REV. STAT. § 13–1–124, personal jurisdiction over Defendants also exists based upon the business Defendants transacted and the alleged tortious acts they have committed within the State of Colorado.

#### A. Wrongful discharge from Resonance in violation of public policy

Ziegler claims Defendants are liable for wrongful discharge in violation of public policy for terminating him in response to his refusal to engage in patent infringement. Defendants assert they fired Ziegler based on his incompetence. They also set forth an affirmative defense of after-acquired evidence arguing that Ziegler's dishonesty, had Defendants been apprised of it during his employment, would have been sufficient to warrant his termination.

■ Colorado recognizes claims for wrongful discharge of an employee in violation of public policy. *See Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 525 (Colo.1996) (upholding wrongful discharge claim based on em-

ployee's refusal to violate the Board of Accountancy Rules of Professional Conduct); *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 108 (Colo.1992) (prohibiting termination for refusing to participate in illegal conduct); *Jones v. Stevinson's Golden Ford*, 36 P.3d 129, 133–34 (approving wrongful discharge claim based on employee's refusal to violate Consumer Protection Act and Motor Vehicle Repair Act). An employer is liable for wrongful discharge in violation of public policy if: (1) the employer instructed the employee to engage in an illegal act as part of the employee's work related duties, (2) such action directed by the employer would violate a statute or clearly expressed public policy, (3) the employer terminated the employee based on the employee's refusal to perform the illegal act, and (4) the employer knew or should have known that the employee's refusal was due to the employee's reasonable belief that the act was illegal. *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1235 (10th Cir.1997) (citing *Lorenz*, 823 P.2d at 109).

■ Defendants assert the civil wrong of patent infringement does not fall within the purview of this public policy exception. Specifically, Defendants point to the Colorado Supreme Court's decision in *Coors Brewing Co. v. Floyd* finding "[t]he public policy exception protects an employee from being forced to choose between committing a crime and losing his or her job." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 667 (Colo.1999). Notwithstanding the court's use of the word "crime," the *Floyd* court also affirmed its holding in *Lorenz* acknowledging under the public policy exception, an employee "should not be put to the choice of either obeying an employer's order to violate the law or losing his or her job." *Coors*, 978 P.2d at 667 (quoting *Lorenz*, 823 P.2d at 109) Colorado courts have interpreted this public policy exception as encompassing not only the commission of a

crime, but also the violation of such things as rules of professional conduct and the Consumer Protection Act. *See e.g., Mariani*, 916 P.2d at 525, *see also Jones*, 36 P.3d at 133–34.

■ Patent infringement is a violation of 35 U.S.C. § 271 (2004). An employee would violate the law if he or she acted in contravention to this statute. It follows, therefore, that an employer may not retaliate against an employee for the latter's refusal to infringe or violate a patent.

■ Pursuant to defendant's summary judgment motion, I must decide whether there is a genuine issue of material fact with regard to plaintiff's wrongful discharge claim. Ziegler has presented evidence, consisting of his affidavit and an affidavit of a corroborating witness, asserting, *inter alia*, defendants directed him to violate the Akzo–Nobel patent and then terminated him based upon his refusal to comply with such directions. Ziegler Aff. ¶¶ 3, 6; Clanton Aff. ¶¶ 2, 3 In fact, Randy Clanton, who replaced Ziegler at Resonance, submitted an affidavit stating Defendants, with knowledge of the potential for infringement, also directed him to develop a generator, which he believed was a violation of the Akzo–Nobel patent. Clanton Aff. ¶¶ 2, 3. Defendants, on the other hand, contend Ziegler was not ordered to violate such patent because the generator was *chlorite*-based rather than the Akzo–Nobel's *chlorate*-based generator. Zhou Decl., App. Tab E, ¶ 10. Defendants also argue they fired Ziegler due to his incompetence. *Id.* at ¶¶ 7–9; Kolb Decl., App., Tab F, ¶ 5; Kolb Dep., App., Tab B, Tr. 136:12–25; 137:1–25; Wooster Dep., App., Tab C, Tr. 207: 5–10.

A trier of fact must resolve these disputed issues in order to determine if there is a viable claim for wrongful discharge in violation of public policy. In my view, these questions are appropriately deter-

mined not by a trial judge on summary judgment, but by a jury whose primary function is to make determinations about people's conduct based on subjective standards. *See generally,* A. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Cliches Eroding our Day in Court and Jury Trial Commitments?* 78 N.Y.U. Law. R. 982, 1132 (June 2003) (consideration of objective standards of "human behavior, reasonableness, and state of mind [are] matters historically considered at the core province of jurors"). In Professor Miller's words, a decision now that no reasonable juror could find that Ziegler was terminated for refusing to violate a patent "discount[s] (1) the importance of a jury's evaluation of witnesses, (2) the greater sensory impact on the trier of live testimony, and (3) the value of trial cross-examination based on a full presentation of the evidence." *Id.* at 1090.

### 1. Defendants' affirmative defense of after-acquired evidence

■ Defendants also contend Ziegler acted in a dishonest manner in misrepresenting his contact with and employment of a Denver law firm for reviewing the enforceability of the Azko–Nobel patent. Zhou Decl., App., Tab E, ¶ 13; Ex. 11, App., Tab J. Defendants argue Ziegler's dishonesty, had Defendants been aware of it during his employment with Resonance, would have been sufficient to warrant his termination. As such, Defendants claim this after-acquired evidence serves as a shield from liability against Ziegler's wrongful discharge claim.

■ "The after-acquired evidence doctrine shields an employer from liability or limits relief where, after a termination, the employer learns for the first time about an employee's wrongdoing that would have caused the employer to discharge the employee." *Armani v. Maxim*

*Healthcare Serv., Inc.,* 53 F.Supp.2d 1120, 1127 (D.Colo.1999) (citing *Crawford Rehabilitation Serv., Inc. v. Weissman,* 938 P.2d 540, 546 (Colo.1997)). In cases involving employment discrimination and other issues inextricably tied to the public interest, courts have acknowledged that the after-acquired evidence doctrine does not bar a plaintiff's claim, but rather limits damages. *See id.* at 1128 (citing *McKennon v. Nashville Banner Publ'g,* 513 U.S. 352, 362, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995)). I find there is a public interest in protecting patents as well as prohibiting an employer from mandating its employees violate laws, including patent laws, within the course of their employment.

The Colorado Supreme Court has expressly left open the question of whether after-acquired evidence of resume fraud would provide a complete defense to an employee's action for retaliatory firing in violation of public policy or whether *McKennon* would apply and thereby simply restrict the application of the after-acquired evidence doctrine. *See Crawford,* 938 P.2d at 553 Even if I were to accept Defendants' position regarding the legal impact of their defense based on after-acquired evidence, proof of the defense in this case will be for the jury. Based on the foregoing, I deny summary judgment with respect to Ziegler's claim for wrongful discharge in violation of public policy.

### B. Individual Liability for Interference with Employment

■ Ziegler asserts summary judgment is improper because there is a factual dispute as to whether Defendants acted in good faith and in the best interest of the corporation when they terminated him. I agree.

■ Under Colorado law, an officer or director of a corporation acting within the scope of his or her official capacity will

not be subject to personal liability for inducing the corporation's breach of its contract. *Powell Products, Inc. v. Marks,* 948 F.Supp. 1469, 1477–78 (D.Colo.1996) (citing *Zappa v. Seiver,* 706 P.2d 440, 442 (Colo. Ct.App.1985)). If an officer or director acts improperly in terminating the employment, however, he may be subject to liability. *Zappa,* 706 P.2d at 442. An officer or director acts in an "improper" manner if he is motivated "by a desire to harm one of the contracting parties or to interfere in contractual relations between the parties." *Powell Products,* 948 F.Supp. at 1478 (citing *Trimble v. City & County of Denver,* 697 P.2d 716, 726 (Colo.1985)).

■■■ In setting forth the elements found in the Restatement (Second) of Torts § 767 for determining whether a person acted improperly in interfering with a contract, the Tenth Circuit held that a court must consider (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interest sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interferences, and (g) the relations between the parties. *Q.E.R., Inc. v. Hickerson,* 880 F.2d 1178, 1183–84 (10th Cir.1989) (citing Restatement (Second) of Torts § 767 (1977)). Notwithstanding any privilege an officer or director of a corporation may enjoy for taking actions in good faith and in the best interest of the company and/or its shareholders, however, the privilege is not absolute. *Id.* at 1184 (citing Restatement (Second) of Torts § 767 cmt. b (1977)) ("The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision

therefore depends upon a judgment and choice of values in each situation.").

Ziegler submitted evidence, in the form of affidavits, contending Defendants fired him in retaliation for his refusal to violate the Akzo–Nobel patent, Defendants acted with personal animus toward him, and were motivated solely by a desire to interfere with the contractual relations between Ziegler and Resonance. Ziegler Aff., Tab A, ¶ 11 (indicating Kolb left a voice mail message for Ziegler stating "you're finished" in a threatening tone); Clanton Aff. ¶ 6 (stating Defendants gave Clanton false information about Ziegler in an attempt to elicit a negative reaction toward Ziegler); e-mail from Nobakani Taneya, President of Inabata, to Joe Zhou, Chairman and director of Resonance, Larry Kolb, President of TSI (Aug. 16, 2000, 17:50:32 MST).

Defendants, on the other hand, have asserted through affidavits and deposition testimony they were not motivated by personal animus nor a desire to interfere with the contractual relations, but rather Ziegler's termination resulted from his incompetence. Zhou Decl., App. Tab E, ¶¶ 7–10; Kolb Decl., App., Tab F, ¶ 5; Kolb Dep., App., Tab B, Tr. 136:12–25; 137:1–25. Wooster Dep., App., Tab C, Tr. 207: 5–10. Accordingly, summary judgment is not proper.

*C. Claims related to stock ownership: Civil Theft, Conversion, Breach of Contract, Breach of Fiduciary Duty, Fraudulent Misrepresentation, and Negligent Misrepresentation*

■■■ Civil theft is defined by the criminal code in section 18–4–405, titled the Rights in Stolen Property Statute. *See Itin v. Ungar,* 17 P.3d 129, 133 (Colo.2000). The Colorado Supreme Court held a defendant is subject to liability under this "civil theft" statute if the trier of fact

determined the defendant committed acts of theft, as defined by the Criminal Code. *Id.* at 135. The court further held a defendant can be found liable under the statute based on proof of a criminal act, but absent a prior criminal conviction. *Id.* at 133 According to the court, the statute provides a private civil remedy; thus the court found it inconsistent to compel the defendant to be convicted of a crime. *Id.* at 133–34.

■ This statutory section provides, in pertinent part, "[a]ll property obtained by theft, robbery, or burglary shall be restored to the owner." *See* § 18–4–405. The *Itin* court found,

> Placement within the Criminal Code requires that the owner of the property must prove that the taker or the defendant committed *acts* constituting at least one of the statutory crimes. With respect to the crime of theft claimed here, all of its statutory elements must be proved, including the two culpable mental states: (1) that the defendant knowingly obtained control over the owner's property without authorization and (2) that he or she did so with the specific intent to permanently deprive the owner of the benefit of property.

*Itin,* 17 P.3d at 134 (citing § 18–4–401(1)). Colorado courts have construed this statute to mean that return of the property does not necessarily preclude a finding of wrongful intent nor purge the defendant of guilt. *People v. American Health Care, Inc.,* 42 Colo.App. 209, 591 P.2d 1343, 1345 (1979) (citing *Kelley v. People,* 166 Colo. 322, 443 P.2d 734 (1968)).

■ Ziegler asserts Defendants deprived him of his ten percent interest in Resonance. Ziegler Aff., Tab A, ¶ 10; e-mail from Nobakani Taneya, President of Inabata, to Joe Zhou, Chairman and director of Resonance, Larry Kolb, President of TSI (Aug. 16, 2000, 17:50:32 MST); Kolb Dep., Tab C, p. 8, ln. 2–21, p. 24, ln.

2–6, p. 34–35. Defendants counter that they not only awarded Ziegler this ten percent stock interest, but that he has maintained control of these shares since his employment began with Resonance. The deposition testimony is conflicting with regard to this issue, even among various Defendants. Larry Kolb testified during his deposition Ziegler did not possess any ownership or stock interest in Resonance and denied the existence of an agreement to award Ziegler a ten percent interest. Kolb Dep., Tab C, p. 8, ln. 2–21, p. 24, ln. 2–6. Various other Defendants testified in depositions, however, Ziegler was in fact a partial owner in Resonance and he had received his promised ten percent interest in the company. Wooster Dep., Defs' Tab C, Tr. 57:22–25; 58:2–25; 59:2–18; Rudnitsky Dep., Defs' Tab D, Tr. 26:8–18.

The crucial determination is whether Defendants knowingly took Ziegler's stock or failed to award it to him with the intent to deprive permanently Ziegler of his rightful ownership of the ten percent interest in Resonance. Ziegler provided evidence that he was initially promised and awarded, and then subsequently denied, this stock interest for a period of several years, whereas Defendants presented evidence to the contrary. Thus, there is a genuine issue of material fact in dispute among the parties. Accordingly, I deny summary judgment on Ziegler's claim for civil theft.

■ Defendants also have failed to establish the lack of a genuine issue of material fact with regard to the claims for conversion, breach of contract, breach of fiduciary duties, fraudulent misrepresentation, and negligent misrepresentation. Ziegler asserts Defendants initially awarded him a ten percent ownership interest in Resonance, making him a minority shareholder, and then took it away from him.

Thus, he alleges Defendants are liable for conversion and breach of fiduciary duties. In the alternative, Ziegler claims Defendants promised him an ownership interest, but never awarded it to him, thereby invoking claims for breach of contract and fraudulent, or at a minimum, negligent representation.

Ziegler supports his claims through Defendants' prior filings, deposition testimony and affidavits. Defs.' Answer and Countercl. ¶ 2; Defs.' Answer to Am. Compl. and Countercl.; Defs.' Answer to Second Am. Compl. and Countercl. ¶ 2; Ziegler Aff. ¶¶ 10–12; Kolb Dep. P. 8, ln. 3–18; e-mail from Nobakani Taneya, President of Inabata, to Joe Zhou, Chairman and director of Resonance, Larry Kolb, President of TSI (Aug. 16, 2000, 7:50:32 MST). Defendants provide evidence in the form of deposition testimony and affidavits of Resonance's corporate attorney, certified public accountant, and officers and directors. Wooster Decl., App., Tab G, ¶¶ 3–4; Kolb Decl., App., Tab F. ¶¶ 2–3; Rudnitsky Dep., App. Tab D, Tr. 19:2–4; 20:8–9; 26:15–18. Although Ziegler must present additional evidence at trial to prevail on these issues, there is sufficient evidence for finding a disputed issue of material fact. I therefore deny summary judgment based on the foregoing claims.

### D. Piercing the Corporate Veil

 Ziegler's ninth claim for relief is against Defendants Kolb and Zhou, alleging each should be held personally liable for their corporate acts under the theory that each used the corporation as his alter ego. Typically, a court will not allow the corporate veil to be pierced, except under certain factual circumstances. The court considers a variety of factors to determine whether the corporate form should be disregarded including: (1) whether the corporation is operated as a separate entity, (2) commingling of funds and other assets, (3) failure to maintain adequate corporate records, (4) the nature of the corporation's ownership and control, (5) absence of corporate assets and undercapitalization, (6) use of the corporation as a mere shell, (7) disregard of legal formalities, and (8) diversion of the corporation's funds or assets to noncorporate uses. *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo.2003). The Tenth Circuit has developed ten factors that must be considered when determining whether to pierce the corporate veil, although not all must be established:

> (1) the parent corporation owns all or a majority of the capital stock of the subsidiary; (2) the parent and subsidiary corporations have common directors or officers; (3) the parent corporation finances the subsidiary; (4) the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8) in the papers of the parent corporation, and in the statements of its officers, 'the subsidiary' is referred to as such or as a department or division; (9) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; (10) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Skidmore, Owings & Merrill v. Canada Life Assurance Co.*, 907 F.2d 1026, 1027 (10th Cir.1990), *quoted with approval in Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC*, 37 P.3d 485, 490 (Colo. App.2001). Ziegler asserts he has established all of the above factors, except for (8). He has presented evidence, in the

form of memoranda and affidavits, asserting Resonance existed only to support the China entity, received all of its funding from the China entity, and Defendants intentionally undercapitalized Resonance. Attach. 2 to Ex. A, para. 1 (e-mail from Gabby to Joe Zhou stating, "Resonance U.S. does not have any income, and is in operation solely to support the China business."); Ziegler Aff. ¶ 12. Moreover, Ziegler presented evidence that Resonance did not follow corporate formalities nor maintain proper corporate documents. Ziegler Aff. ¶ 12; Wooster Dep., Tab O, p. 216, ln. 6–10. Defendants, on the other hand, provided evidence showing, among other things, there was an absence of the unlawful commingling of funds, no stockholder in Resonance used the company to conduct personal affairs, and Resonance was not created to evade legislative policy or to perpetrate a fraud. Wooster Decl., Tab G, ¶¶ 9–12; Kolb. Decl., Tab F, ¶ 4; Rudnitsky Dep., App., Tab D, Tr. 34:24–25; 35:2–4.

While Ziegler's evidence is sufficient to create a triable issue as to the individual liability of Kolb and Zhou, Ziegler must present substantially more evidence at trial to prevail on this claim. Piercing the corporate veil is considered an extreme measure. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 123 S.Ct. 1655, 1661, 155 L.Ed.2d 643 (2003). As such, courts mandate that plaintiffs satisfy a high burden of proof. As it stands now, Ziegler managed to create a disputed issue of material fact with regard to several elements contained in a veil-piercing claim; however, he accomplished this by a narrow margin. Thus, substantially more will be required during litigation in order to prevail on this claim.

### E. Civil Conspiracy or Joint Liability

██ Under Colo. Rev. Stat. § 13–21–111.5(4), "[j]oint liability shall be imposed on two or more persons who consciously conspire and deliberately pursue a common plan or design to commit a tortious act." Because Ziegler has presented a genuine issue of material fact concerning whether defendants pursued a common plan to commit tortious acts, I find that summary judgment is not appropriate on the claim for joint liability.

██ Ziegler also presented sufficient evidence establishing a genuine issue of material fact with regard to civil conspiracy. As Judge Babcock noted in *Loughridge v. Goodyear Tire and Rubber Co.*, section 13–21–111.5(4) does not set forth every element of the tort of civil conspiracy. *Id.* (citing *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989)). "The elements of civil conspiracy are that: (1) two or more persons; (2) come to a meeting of the minds; (3) on an object to be accomplished or a course of action to be followed; (4) and one or more overt unlawful acts are performed; (5) with damages as the proximate result thereof." *Id.* (citing *Jet Courier Serv., Inc.*, 771 P.2d at 502).

As set forth above, Ziegler has presented a disputed issue with regard to whether Defendants worked together with Chinese authorities and others to accomplish, among other things, the unlawful goal of patent infringement or the goal of marketing these water generators in China by unlawful means of patent infringement, which also led to the alleged wrongful discharge, conversion and theft of Ziegler's stock, undercapitalization of Resonance and the like. Accordingly, I deny summary judgment on the civil conspiracy claim.