Marvin J. McCARTY, Plaintiff–Appellant,

v.

KAISER–HILL COMPANY, L.L.C., a Colorado limited liability company, Maurice Brown, Robert Cantwell, and Bill Sutton, individually, and Glenn Gravelle, Defendants–Appellees.

No. 99CA1046.

Colorado Court of Appeals, Div. IV.

July 20, 2000.

Certiorari Denied Jan. 16, 2001.

James H. Downey, P.C., James H. Downey, Englewood, Colorado; Dworkin, Chambers & Williams, P.C., Gary J. Benson, Denver, Colorado, for Plaintiff–Appellant.

Sherman & Howard L.L.C., Raymond M. Deeny, William A. Wright, Colorado Springs, Colorado, for Defendants–Appellees Kaiser–Hill Company, L.L.C., Maurice Brown, Robert Cantwell, and Bill Sutton.

Ewing & Ewing, PC, Laurence B. James, Englewood, Colorado, for Defendant–Appellee Glenn Gravelle.

Opinion by Judge MARQUEZ.

In this action for outrageous conduct and professional negligence, plaintiff, Marvin McCarty, appeals the summary judgments entered in favor of defendants, Kaiser–Hill Company, L.L.C. (Kaiser–Hill), Maurice Brown, Robert Cantwell, and Bill Sutton (collectively defendants), and Glenn Gravelle, (psychologist). We affirm.

According to the record, plaintiff, an employee at Rocky Flats, communicated to his

psychologist that he feared for his safety and was afraid that if he were attacked he would have to use deadly force to defend himself. Following receipt of a communication from the psychologist, Kaiser–Hill discharged plaintiff, based on alleged threats to company employees.

Plaintiff then brought this action against Kaiser–Hill and defendants alleging outrageous conduct, and against the psychologist for professional negligence.

In granting the psychologist's motion for summary judgment, the trial court determined that, although plaintiff denied making such threats, the psychologist had the responsibility under § 13–21–117, C.R.S.1999, to determine, based upon his interpretation of the information communicated to him, whether the threat concerned imminent physical violence and whether the threat was against a specific person or persons. The trial court ruled that the statute creates a duty to warn any person of a serious threat, that the psychologist had satisfied the obligations required by § 13–21–117, and thus that he was entitled to statutory immunity.

In a separate summary judgment in favor of Kaiser–Hill and defendants, the trial court held that plaintiff's allegations did not rise to the "exacting level" required to support a claim for outrageous conduct.

## I.

Plaintiff contends that the psychologist had no duty to warn because a serious threat of imminent physical violence was not communicated. We disagree.

Summary judgment is appropriate only when the pleadings and supporting documents demonstrate that no genuine issue exists as to any material fact and that the moving party is entitled to summary judgment as a matter of law. We review an order granting or denying a motion for summary judgment *de novo.* *Vail/Arrowhead, Inc. v. District Court,* 954 P.2d 608 (Colo. 1998).

The issue of legal duty is a question of law to be determined by the court. *Connes v. Molalla Transport System, Inc.,* 831 P.2d 1316 (Colo.1992).

## A.

As pertinent here, § 13–21–117 provides that:

No ... psychologist, or other mental health professional ... shall be liable for damages in any civil action for failure to warn or protect any person against a mental health patient's violent behavior, nor shall any such person be held civilly liable for failure to predict such violent behavior, except where the patient has communicated to the mental health care provider a serious threat of imminent physical violence against a specific person or persons. When there is a duty to warn and protect under the circumstances specified above, the duty shall be discharged by the mental health care provider making reasonable and timely efforts to notify any person or persons specifically threatened, as well as notifying an appropriate law enforcement agency or by taking other appropriate action including, but not limited to, hospitalizing the patient. *No ... psychologist ... shall be liable for damages in any civil action for warning any person against or predicting a mental health patient's violent behavior ....* (emphasis added)

The interpretation of a statute is a question of law which we review *de novo.* When interpreting statutes, we must give full effect to the intent of the General Assembly. To determine the legislative intent, we look first to the words used, and those words and phrases must be read in context and accorded their plain and ordinary meaning. *Minch v. Town of Mead,* 957 P.2d 1054 (Colo.App. 1998).

Under § 13–21–117, psychologists are immune from liability at least when they act in accordance with the duty to warn others of their patient's serious threats of imminent physical violence. *See Halverson v. Pikes Peak Family Counseling & Mental Health Center,* 795 P.2d 1352 (Colo.App.1990)(statute recognizes and imposes a duty upon health care provider in instance involving a patient's communication to the health care provider of a serious threat of imminent physical violence against a specific person or persons).

The purpose of the statute is to provide immunity to a psychologist or other mental health professional for warning against a mental health patient's violent behavior where the patient has communicated a threat of violence against a specific person or persons.

■ Under the statute, no psychologist is liable for damages in "any civil action for warning any person against or predicting" a mental health patient's violent behavior. Section 13–21–117, C.R.S.1999. The statute contains no qualifying language indicating that the psychologist's immunity is predicated upon a subsequent determination whether the patient in fact threatened anyone. To hold that immunity is dependent on the outcome of such a factual dispute would thwart the purpose of the statute and would inhibit health care providers from providing warnings in a timely manner.

Here, the psychologist's affidavit that accompanied his motion for summary judgment avers that on October 2, 1995, plaintiff made an emergency phone call to the psychologist at 1:30 a.m. and spoke to him for more than one hour. During this conversation, plaintiff talked about a problem he had had the previous day with his supervisor, described his strong negative feelings about his supervisors, and expressed concern that he might not be able to control his anger. The psychologist determined that plaintiff was communicating to him a serious threat of imminent physical violence against specific supervisors at his place of employment.

According to the affidavit, the psychologist informed plaintiff that he (the psychologist) had a duty to warn these individuals. Plaintiff acknowledged this duty and provided the psychologist with the names and phone numbers of his supervisors. The psychologist arranged to see plaintiff at a hospital that same morning. During the psychologist's interaction with plaintiff at the hospital, the psychologist continued to believe plaintiff posed a threat to his supervisors. Following his evaluation of plaintiff, the psychologist warned plaintiff's supervisor.

Also attached to the psychologist's motion for summary judgment were the psychologist's notes reflecting that, when plaintiff had called, he was "feeling sort of homicidal." When discussing his supervisor, plaintiff told the psychologist that he knew martial arts and, if provoked, could kill someone. The psychologist also noted that plaintiff had stated that: "[T]hey don't deserve to die, they do deserve to have their ass kicked."

Plaintiff denies that he communicated a serious threat of imminent physical violence and asserts that the evidence was compelling that he was not such a threat. He also points to the fact that he was released from the hospital. He contends that he is entitled to have the trier of fact determine whether there was an imminent threat of physical violence present which would allow the psychologist to violate his confidence and make statements which cost plaintiff his job.

We conclude that the psychologist's affidavit and notes were sufficient to demonstrate as a matter of law that the psychologist had a duty to warn plaintiff's supervisors. *See Perreira v. State,* 768 P.2d 1198 (Colo.1989)(psychiatrist may be required to take reasonable precautions to protect the public from the danger created by the release of the involuntarily committed patient).

### B.

■ Citing § 13–90–107(1)(g), C.R.S.1999, plaintiff asserts that § 13–21–117 provides a narrowly defined exception to a psychologist's continuing statutory and contractual duty to maintain in strict confidence what a patient tells him or her. Plaintiff asserts that if a duty to warn existed in this case, the duty was discharged by hospitalization, and the psychologist's voluntary decision to warn after the duty was discharged constituted a violation of confidence. We disagree.

Section 13–90–107(1)(g) provides that a licensed psychologist shall not be examined concerning any communication made by the client in the course of professional employment. However, contrary to plaintiff's assertion, that statute is not applicable to the present proceeding.

As a preliminary matter, the record indicates that plaintiff was not admitted to the

hospital. Rather, he was taken to the emergency room and then released.

■ Further, we do not read § 13–21–117 to limit immunity to instances when a psychologist has hospitalized the patient. The statute simply provides alternative ways in which a mental health care provider can meet the statutory requirements for immunity. Thus, a decision by a psychologist to hospitalize the patient does not mean that he or she has forfeited this immunity by also choosing to make a reasonable and timely effort to notify any person specifically threatened.

In addition, the more specific statute, § 13–21–117, prevails over the general statute providing a privilege for psychologist-patient communications. *See Regional Transportation District v. Voss*, 890 P.2d 663 (Colo.1995)(more specific statute applies).

Accordingly, plaintiff's assertion regarding a violation of confidence must be rejected.

## II.

■ We also do not agree with plaintiff that he has presented sufficient evidence to support a claim for outrageous conduct.

Plaintiff asserts that defendants' conduct was outrageous because he was uniquely vulnerable to severe emotional distress and he was singled out for subjection to harassment and intimidation. According to plaintiff, this conduct was intended to force his resignation, or to make him act in such a manner as to give Kaiser–Hill a basis for terminating his employment.

■ The elements of outrageous conduct are: 1) the defendant engaged in extreme and outrageous conduct; 2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and 3) defendant's conduct caused plaintiff to suffer severe emotional distress. *Culpepper v. Pearl Street Building, Inc.*, 877 P.2d 877 (Colo.1994).

■ Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, it is the initial responsibility of a court to determine whether reasonable persons could differ on the question. The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high. Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Coors Brewing Co. v. Floyd*, 978 P.2d 663 (Colo.1999).

In support of his outrageous conduct claim, plaintiff alleged that the defendants sought to "wash him out of his employment," that defendants became determined to terminate his employment because of his filing of safety concerns with management and his reporting that his foreman, defendant Brown, and co-workers had attended a striptease bar while being paid to perform their jobs.

Plaintiff also claims that defendant Brown and defendant Sutton engaged in a pattern of physical and psychological intimidation against him. For example, he alleges that he received a threatening phone call at his home and that the number was traced to the desk phone belonging to defendant Sutton. Plaintiff also alleges that, on two separate occasions, defendant Sutton attempted vehicular assault on him. This intimidation, according to plaintiff, forced him to seek psychiatric counseling. The trial court noted that plaintiff admitted he did not know if defendant Sutton made the phone call, and that he did not know if Sutton was trying to beat him through the intersection or trying to cause him to have an accident.

Additionally, plaintiff alleges he was the only employee at Kaiser–Hill to have his performance and shift hours questioned, that other co-workers were informed that associating with plaintiff would be hazardous to their employment, that he was identified as a troublemaker by management, and other similar claims. Plaintiff also presented evidence of comments made at meetings of the managers to support the allegations of his complaint and specifically denied making threats to kill his co-workers.

However, we conclude that plaintiff has not presented sufficient evidence from which a jury could find that the conduct of Kaiser–Hill and defendants was so extreme in degree, as to go beyond all possible bounds of decency, or to be regarded as atrocious and utterly intolerable in a civilized community. *See Eddy v. Brown,* 715 P.2d 74 (Ok.1986)(summary judgment for defendants affirmed where plaintiff was mimicked and ridiculed about his diligent work and impaired speech and was otherwise harassed).

Accordingly, plaintiff has not stated a cognizable claim for outrageous conduct.

The judgments are affirmed.

Judge ROTHENBERG and Judge DAILEY concur.