**Richard ARCHER, Plaintiff–Appellee and Cross–Appellant,**

v.

**FARMER BROS. CO., a California corporation; Al Henshaw, individually and as an employee of Farmer Bros. Co.; and Dennie Rawson, individually and as an employee of Farmer Bros. Co., Defendants–Appellants and Cross–Appellees.**

No. 00CA1856.

Colorado Court of Appeals, Div III.

May 9, 2002.

Rehearing Denied Aug. 1, 2002. *

Certiorari Granted May 19, 2003.

* Roy, J., would Grant.

Johnson & Ayd, P.C., Patricia M. Ayd, Denver, Colorado; David Littman, P.C., David Littman, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Stromberg Cleveland Crawford & Schmidt, P.C., Paul D. Godec, Colleen M. Rea, Peter C. Middleton, Denver, Colorado; DiManna & Jackson, Gary M. Jackson, Neeti Pawar, Denver, Colorado, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge DAILEY.

Defendants, Farmer Bros. Co., Al Henshaw, and Dennie Rawson, appeal from a judgment entered on jury verdicts awarding damages to plaintiff, Richard Archer, for intentional infliction of severe emotional distress (outrageous conduct). Archer cross-appeals an order denying him costs and awarding costs to Henshaw and Rawson. We affirm.

Farmer investigated Archer, whom it had employed for twenty-two years, for alleged misconduct. Later, on the order of Farmer's vice president of sales (VP), Archer's supervisors, Henshaw and Rawson, delivered notice of termination and a final paycheck to Archer while he lay in bed at his mother-in-law's home recuperating from a heart condition.

Archer sued defendants for violations of the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and the Colorado Anti–Discrimination Act (CADA), and for outrageous conduct.

The trial court dismissed the ADA and ADEA claims as to Henshaw and Rawson and the CADA claims as to all defendants.

Following the presentation of evidence, the trial court directed a verdict against Archer on his ADA claim against Farmer. Thereafter, the jury returned a verdict for Farmer on Archer's ADEA claim and for Archer on his outrageous conduct claims against all defendants. The jury awarded Archer $30,500.00 in noneconomic damages and $30,500.00 in exemplary damages against

Farmer, and $2,500.00 and $2,499.00 in non-economic damages against Henshaw and Rawson, respectively.

The trial court awarded costs only to Henshaw and Rawson.

## I.

■ Defendants contend that the trial court erred in not dismissing Archer's outrageous conduct claim as falling under the Colorado Workers' Compensation Act (Act). We disagree.

The Act is an employee's exclusive remedy against an employer or coworkers for personal injuries where, as pertinent here, "at the time of the injury, the employee is performing service *arising out of and in the course of* the employee's employment." Section 8–41–301(1)(b), C.R.S.2001 (emphasis supplied); *see* § 8–41–102, C.R.S.2001 (abolishing causes of action against employer).

"Arising out of" and "in the course of" employment are two separate requirements. *Triad Painting Co. v. Blair*, 812 P.2d 638, 641 (Colo.1991).

Here, while Henshaw and Rawson's delivery of the paycheck and notice of termination may have arisen out of Archer's employment, *see Horodyskyj v. Karanian*, 32 P.3d 470, 475–76 (Colo.2001), Archer's injury did not occur "in the course of" his employment.

■ As used in the Act, the phrase "in the course of" refers to the time, place, and circumstances under which a work-related injury occurs. *Horodyskyj v. Karanian, supra*, 32 P.3d at 475. "The 'course of employment' requirement is satisfied when it is shown that the injury occurred within the time and place limits of the employment relation and during an activity that had some connection with the employee's job-related functions." *Popovich v. Irlando*, 811 P.2d 379, 383 (Colo.1991)(the exclusivity provision must be strictly limited to injuries sustained where both the tortfeasor and the victim are acting in the course of employment). *See* 1 *Larson's Workers' Compensation Law* § 12.01, at 12–1 (2000).

Here, Archer was on indefinite sick leave as a result of his heart condition when he was fired. Henshaw had previously reviewed and approved his sick leave, and Archer would not have been allowed to return to work without producing a doctor's release, which he did not have. Defendants did not give Archer advance notice of their visit, and, upon entering Archer's mother-in-law's home, Henshaw and Rawson went directly into the spare bedroom where Archer was lying partially undressed in bed and, without any further notice, delivered the news about his termination.

Although Henshaw and Rawson were engaged in work-related activity, Archer was not. Inasmuch as he was away from work on approved sick leave, the incident did not occur within the time or space parameters of his employment. Further, when terminated, Archer was not making sales, supervising staff, delivering goods, or attending to any other work-related duty; rather, he was resting in bed, an activity unrelated to his employment. *See, e.g., Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1275 (4th Cir.1994)(plaintiff's outrageous conduct claim not barred by South Carolina workers' compensation act because employee was on vacation when employer met with him about employee's alleged misconduct); *Kirk v. Smith*, 674 F.Supp. 803, 810 (D.Colo.1987)(employee's outrageous conduct claim not barred by Act because employee's duties did not include the activities attending her injury).

■ We, like the trial court, reject defendants' assertion that the presence of a company van outside the mother-in-law's home in and of itself satisfied the "in the course of" employment requirement. Were we to conclude otherwise, every injury occurring in an employee's home when the employee had a company van parked outside would have to be compensable under the Act. Eschewing such an interpretation, we conclude that Archer's work environment did not extend to his mother-in-law's home simply because a company van was parked outside.

Under the circumstances presented here, we conclude that the incident at Archer's mother-in-law's home did not occur in the course of his employment. Consequently, his claim did not fall within the coverage of the

Act and he was not barred from pursuing it in district court.

## II.

Defendants next contend that the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict (JNOV) as to Archer's outrageous conduct claim. We disagree.

The elements of outrageous conduct are: (1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress. *See McCarty v. Kaiser–Hill Co.*, 15 P.3d 1122, 1126 (Colo. App.2000).

As to the first element, the level of outrageousness required to create liability is extremely high. Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient; only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice. *Bob Blake Builders, Inc. v. Gramling*, 18 P.3d 859, 866 (Colo.App.2001). *See also Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988)(facts must so arouse resentment in average members of the community against the defendant as to lead them to exclaim, "Outrageous!").

As a threshold matter, the trial court must determine whether the proof of outrageousness is sufficient as a matter of law. The claim should be submitted to the jury only if reasonable persons could differ on whether the defendant's conduct was sufficiently outrageous. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo.1999).

The same standard governs a trial court's rulings on motions for directed verdict and JNOV. Directed verdicts are appropriate only where the evidence compels the conclusion that reasonable persons could not disagree and that no evidence, or legitimate inference arising therefrom, has been presented on which the jury's verdict against the moving party could be sustained. Likewise, JNOV can be entered only if the evidence, viewed in the light most favorable to the nonmoving party, is such that no reasonable person could reach the same conclusion as that reached by the jury. *Jones v. Stevinson's Golden Ford*, 36 P.3d 129, 132 (Colo. App.2001).

Here, defendants challenge the sufficiency of the evidence only with respect to the outrageous conduct and mental culpability elements of the tort. The issue, then, is whether, viewing the evidence in the light most favorable to Archer, reasonable persons could disagree about whether the requisite level of outrageousness had been shown and whether defendants engaged in such conduct recklessly or with the intent to cause Archer severe emotional distress.

Although conflicting evidence was presented, the evidence, viewed in the light most favorable to Archer, revealed the following.

Farmer's VP, Henshaw, and Rawson all believed that Archer had suffered a heart attack just five days before the termination and were aware that Archer was out on indefinite sick leave. Although Archer had not missed a day of work in eight years, Henshaw and Rawson both knew he had been absent from work for four days before his termination.

Farmer's VP ordered Archer's termination from employment. When Henshaw initially demurred, Farmer's VP told him, "I don't give a shit if [Archer] is on his deathbed, if I tell you to fire him, that's what you will do, or I'll get somebody who will." Henshaw thereafter carried out his instructions, without inquiring further about the status of Archer's health, evaluating the possible medical consequences of delivering such news while Archer was ill, or discussing alternative means to deliver the news.

Instead, Henshaw and Rawson went in search of Archer, ending up at Archer's mother-in-law's home. In the twenty years Henshaw and Rawson had known Archer, they had never visited him or been invited to his home. Upon arrival at his mother-in-law's home, they entered uninvited.

Neither Henshaw nor Rawson announced the purpose of their visit or asked about Archer's health. Upon entering the spare bedroom, they found Archer lying in bed, not fully clothed. Without asking Archer whether he was fit to discuss work matters or when he intended to return to work, they peremptorily announced that they had his termination papers, which they needed him to initial.

Archer had a reputation as an accomplished branch manager, was fast approaching retirement, and, even though he was being investigated for alleged misconduct, had no reason to anticipate that he would be fired by Farmer. Consequently, news of his firing came as a shock to him.

Noticeably upset by the incident, Archer demanded that Henshaw and Rawson leave the premises. According to Archer's doctor, Archer's health was in such a delicate condition that the termination incident could have triggered a fatal heart attack. Archer attempted to commit suicide that evening.

From this evidence, we conclude that a reasonable person could find that defendants' conduct—barging into a relative's home and, without any prior notice or other consideration, abruptly firing a twenty-two-year employee while he lay in bed, partially undressed, recuperating from what five days earlier had appeared to be a heart attack, and was, in any event, a serious heart condition—so far exceeded the bounds of decency as to be atrocious and utterly intolerable in a civilized community.

Similarly, we conclude that the statement of Farmer's VP and the actions of Henshaw and Rawson, viewed in light of the information they had regarding Archer's condition, could support a determination by a reasonable person that defendants acted recklessly or with the intent of causing Archer severe emotional distress.

Defendants' reliance on various outrageous conduct cases involving physical assaults, threats of physical force, or overly coercive tactics is misplaced. None of those cases articulated a "physical force, threat, or coercion" requirement for recovery; they just happened to involve the application of outra-geous conduct principles to those particular circumstances. In other cases, outrageous conduct has been found without such physical or coercive action. See *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970)(harassment via telephone and mail and threats to garnish wages sufficient to support outrageous conduct claim); *Meiter v. Cavanaugh,* 40 Colo.App. 454, 457, 580 P.2d 399, 401 (1978)(outrageous conduct shown when attorney belligerently refused to vacate premises for subsequent tenant without regard for her poor medical condition and implied he had special influence in judicial proceedings); *Agis v. Howard Johnson Co.,* 371 Mass. 140, 141, 355 N.E.2d 315, 317 (1976)(firing waitresses in alphabetical order until one admitted theft sufficient to state a claim of outrageous conduct).

Consequently, the trial court properly denied defendants' motions for both directed verdict and JNOV.

### III.

Farmer contends that the jury's award of exemplary damages is unsupported by the evidence. We disagree.

Pursuant to § 13–21–102(1)(a), C.R.S.2001, a person may recover reasonable exemplary damages in addition to, but not exceeding, the amount of actual damages awarded if the civil injury complained of is attended by circumstances of, among other things, willful and wanton conduct.

"Willful and wanton conduct" is defined in § 13–21–102(1)(b), C.R.S.2001, as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."

This definition includes conduct that creates a substantial risk of harm to another and is purposefully performed with an awareness of the risk in disregard of the consequences. *Messler v. Phillips,* 867 P.2d 128, 134 (Colo.App.1993). See also *Boulder Meadows v. Saville,* 2 P.3d 131, 139 (Colo. App.2000) (exemplary damages awardable for conduct indicative of "a wanton and reck-

less disregard of the injured party's rights and feelings").

■ While an award of exemplary damages rests in the discretion of the trier of fact, the sufficiency of evidence to support such an award is a question of law for the court to decide. *Messler v. Phillips, supra,* 867 P.2d at 134.

Here, viewed in the light most favorable to Archer, the evidence showed that Henshaw and Rawson acted pursuant to the directions of Farmer's VP, who, despite being made aware of the seriousness of Archer's medical condition, ordered his immediate firing. This evidence, together with the VP's reported statement that he did not care if Archer was "on his deathbed," sufficed to support a reasonable conclusion that Farmer's agents acted purposefully with wanton and reckless disregard for Archer's feelings. Thus, the evidence was adequate to support an award of exemplary damages under § 13–21–102(1)(a).

### IV.

■ On cross-appeal, Archer contends that the trial court erred in denying him costs and in awarding costs to Henshaw and Rawson. We disagree.

Pursuant to C.R.C.P. 54(d) and § 13–16–104, C.R.S.2001, the trial court may award costs to the prevailing party in an action.

When, in a case involving multiple claims, each party prevails in part, the trial court has broad discretion to determine which, if any, party was *the* prevailing party. Section 13–16–108, C.R.S.2001; *Mackall v. Jalisco International, Inc.,* 28 P.3d 975, 977 (Colo. App.2001); *Husband v. Colorado Mountain Cellars, Inc.,* 867 P.2d 57, 61 (Colo.App.1993).

Here, the trial court determined that no costs should be awarded as between Archer and Farmer, but that costs should be awarded to Henshaw and Rawson.

Given that Farmer prevailed on Archer's CADA, ADA, and ADEA claims, while Archer prevailed on his outrageous conduct and exemplary damage claims, we perceive no abuse of discretion in the trial court's conclusion that neither Archer nor Farmer was

"the" prevailing party. *See Dewey v. Hardy,* 917 P.2d 305, 311 (Colo.App.1995)(appellate court will not overturn award of costs unless trial court decision was manifestly arbitrary, unreasonable, or unfair).

Similarly, we perceive no abuse of the trial court's discretion in awarding costs to Henshaw and Rawson where, in addition to prevailing outright on Archer's CADA, ADA, and ADEA claims, they were, with respect to Archer's outrageous conduct claim, held liable for relatively nominal amounts and not at all for exemplary damages.

Accordingly, the judgment is affirmed.

Judge NEY concurs.

Judge ROY dissents.

Judge ROY dissenting.

I respectfully dissent.

I by no means condone the conduct or motive of the employer or its agents in this case. Nevertheless, all niceties and persuasive authorities to the contrary notwithstanding, in my view, a meeting called by an employer to discharge an employee inherently arises out of and is in the course of that employee's employment, regardless of the place of the meeting or the leave status of the employee at the time. Nothing is more inherent or inevitable in an employment relationship than its commencement and termination. Therefore, I would hold that employer's liability is limited to providing workers' compensation benefits under the statute.