**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 22 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ANN MARIE RISKE,

     Plaintiff - Appellant,

v.

KING SOOPERS, a subsidiary of
Kroger; STEVEN KATZENBERGER;
and ROBERT JACKIEWICZ,

     Defendants - Appellees.

No. 02-1378

---

ANN MARIE RISKE,

     Plaintiff - Appellee,

v.

KING SOOPERS, a subsidiary of
Kroger,

     Defendant - Appellant,

and

STEVEN KATZENBERGER and
ROBERT JACKIEWICZ,

     Defendants.

No. 02-1439

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 00-RB-1959 (OES))**

Patricia S. Bangert of Powers Phillips, P.C., Denver, Colorado, for Plaintiff-Appellant/Cross-Appellee.

Raymond M. Deeny (N. Dawn Weber with him on the briefs) of Sherman & Howard L.L.C., Colorado Springs, Colorado, for Defendants-Appellees/Cross-Appellants.

Before **SEYMOUR**, **McKAY**, and **McCONNELL**, Circuit Judges.

**McKAY**, Circuit Judge.

Appellant Riske brought this employment discrimination case against Appellee King Soopers for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1962, 42 U.S.C. § 2000e, and against two individual employees for extreme and outrageous conduct. After Ms. Riske presented her evidence to a jury, the district court granted judgment as a matter of law for King Soopers on the retaliation claim and for the individual employees on the outrageous conduct claim. The jury found in favor of Ms. Riske on the remaining sexual harassment claim. King Soopers made a post-verdict motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), and the district court denied the motion. Both parties appeal.

*Background*

We are asked to review both the district court's dismissal of the outrageous

conduct claim against Mr. Katzenberger[1] pursuant to Fed. R. Civ. P. 50(a) and the district court's denial of King Soopers' motion for judgment as a matter of law on the sexual harassment claim pursuant to Fed. R. Civ. P. 50(b). In both instances, we view the facts in the light most favorable to Ms. Riske as the non-moving party. See Knowlton v. Teltrust Phones, Inc., 189 F.3d 1177, 1186 (10th Cir. 1999) (Rule 50(a) motions); Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1268 (10th Cir. 2000) (Rule 50(b) motions).

Ms. Riske worked at King Soopers for about twenty years and was a bakery manager for about twelve of those years. Aplt. App., Vol. II, at 160-61. Her allegations of outrageous conduct and sexual harassment began in 1997, when on two occasions she received an anonymous rose at work. Id. at 231-33. In 1998, on Valentine's Day, Riske received two more flowers at work, this time with a card signed "Neena." Id. at 233. Ms. Riske did not know anyone named "Neena" and wondered who had sent the flowers. Id. at 233-35. In April of 1998, she "received another flower with the name Neena signed on the card." Id. at 235.

In June of 1998, Ms. Riske received yet another flower delivery from a "Nina" with a message saying, "Being manager is hard [b]ut I hope I look as nice as you when I'm [b]itching." Aplt. App., Vol. V, at 1136. At trial, when asked

---

[1] Ms. Riske does not appeal the district court's dismissal of the other individual employee.

about receiving these flowers, Ms. Riske testified that "it didn't make me feel very good. I didn't know who this person was [and] I had no idea what was happening." Aplt. App., Vol. II, at 241. Ms. Riske called the phone number on the form accompanying the June flowers, but it was disconnected. Id. Sometime in the summer of 1998, Ms. Riske received another flower at the bakery counter with an unsigned card asking why she was mad. Id. at 241-43.

In late August of 1998, Ms. Riske received more flowers with a message reading, "Sorry that the flowers & card upset you. I heard." Aplt. App., Vol. V, at 1137. At this point, Ms. Riske "was getting pretty angry because . . . it felt like somebody had been watching" her. Aplt. App., Vol. II, at 249. In October of 1998, Ms. Riske received a flower with a card from "Neena" that said, "I am moving to love-land, come and see me in love-land[.] I am going to miss . . . you in your tight-ass jeans." Id. at 249-51. She testified that she was upset but was also relieved that the notes and flowers may stop coming. Id. However, later that month, when another anonymous single flower was delivered, Ms. Riske testified that she felt frustrated, angry, and scared. Id. at 251-53.

In December of 1998, Ms. Riske received a gingerbread house at the bakery with a card signed "Neena." Id. at 253-55. She was upset and threw it away. Aplt. App., Vol. II, at 255. In January of 1999, Ms. Riske received a letter at the bakery counter saying, "This is killing me, I have to say bye. I hope you are

loved in your life as much as I have loved you in the past three years. I am sorry for all this. Neena." Id. at 255-59. She was upset and still had no idea who "Neena" was. Id. at 259. In the summer of 1999, Ms. Riske hired a private detective. Id. at 263. Ms. Riske testified that during that summer and fall, Mr. Katzenberger, her manager at the time, stalked her, followed her around the store, and was "whistling in a taunting manner." Id. at 281. Ms. Riske asked Mr. Katzenberger more than ten times why he was watching her and following her around. Aplt. App., Vol. V, at 1049-51. In December of 1999, Ms. Riske reported Mr. Katzenberger's conduct to King Soopers' management. Aplt. App., Vol. II, at 331-32. On January 17, 2000, King Soopers told Ms. Riske that it had finished investigating her claims, and they transferred her to another store the next day. Id. at 377. On January 19, 2000, Mr. Katzenberger admitted to Ms. Riske that he and his co-worker had been sending the notes and flowers under the name "Neena." Id. at 291-97.

Ms. Riske testified that from 1997 to 2000 these incidents caused her physical and emotional harm, including headaches, weight loss, loss of concentration, paranoia, and a loss of enjoyment in her life. Id. at 420-25. Three co-workers testified that they noticed changes in Ms. Riske, including that she became more uptight and upset, lost a significant amount of weight, and became more withdrawn. Aplt. App., Vol. IV, at 879-80, 892; Aplt. App., Vol. V, at

1131.  Mr. Katzenberger also noticed that Ms. Riske became "very withdrawn and angry" during the fall of 1999.  Aplt. App., Vol. V, at 961.  Ms. Riske started seeing a psychiatrist in November of 2000 for depression.  Aplt. App., Vol. IV, at 908-10.  Her psychiatrist testified that Ms. Riske's psychological problems were caused by the events she complained of while working at King Soopers.  Id. at 924.

In addition to these facts, the district court found that other evidence was not relevant to Ms. Riske's claims because it could not be attributed to any defendant.  Since Ms. Riske has not argued that the district court erred in finding this other evidence irrelevant, we will not consider this additional evidence on appeal.

*Discussion*

We first review the district court's judgment as a matter of law in favor of Mr. Katzenberger on the outrageous conduct claim.  We review this dismissal *de novo* and apply the same standards as the district court.  See Thompson v. State Farm Fire and Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994).  That is, we affirm the district court if "there is no legally sufficient evidentiary basis for a reasonable jury to find for" Ms. Riske on the outrageous conduct claim.  Fed. R. Civ. P. 50(a)(1).  Dismissal under Rule 50(a) is proper "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the

opposing party's position." Davis v. United States Postal Serv., 142 F.3d 1334, 1339 (10th Cir. 1998) (internal quotation omitted).

In Colorado, "[t]he elements of outrageous conduct are: (1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." Archer v. Farmer Bros. Co., 70 P.3d 495, 499 (Colo. Ct. App. 2002) (citing McCarty v. Kaiser-Hill Co., LLC, 15 P.3d 1122, 1126 (Colo. Ct. App. 2000)). The first element, extreme and outrageous conduct, is satisfied if the conduct goes "'beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'" Rugg v. McCarty, 476 P.2d 753, 756 (Colo. 1970) (citing Restatement (Second) of Torts § 46 (1965)); see also Churchey v. Adolph Coors Co., 759 P.2d 1336, 1350 (Colo. 1988). The court views the totality of the circumstances in determining whether the conduct at issue is extreme and outrageous. Kirk v. Smith, 674 F. Supp. 803, 811 (D. Colo. 1987); Spulak v. K Mart Corp., 664 F. Supp. 1395, 1397 (D. Colo. 1985). "The question of whether certain conduct is sufficiently outrageous is ordinarily a question for the jury." Meiter v. Cavanaugh, 580 P.2d 399, 401 (Colo. App. Ct. 1978). "But it is for the court to determine in the first instance, whether reasonable men could differ on the outrageousness issue." Id.

Although this case presents a close question, we conclude that the conduct

here comes so close to the bounds of decency that reasonable people could disagree about whether it constitutes actionable conduct. In so holding, we acknowledge that much of the conduct at issue here, when viewed as individual events, would not be sufficient to submit to a jury. However, considering the length of time involved and the managerial relationship between Ms. Riske and Mr. Katzenberger, a jury could find that the conduct became a pattern of harassment specifically designed to cause Ms. Riske emotional distress. Colorado courts have recognized that when conduct might be considered a pattern of harassment that extends over a considerable period time, it should be left "for the jury to determine whether the conduct of defendants was extreme and outrageous." Rugg v. McCarty, 476 P.2d 753, 756 (Colo. 1970) (creditor's repeated acts of harassing plaintiff with phone calls, letters and demands were enough to submit outrageous conduct claim to the jury); see also Mass v. Martin Marietta Corp., 805 F. Supp. 1530, 1543-44 (D. Colo. 1992) (co-workers' racial jokes, egregious racial terms, and other racially derogatory written items were "an intentional pattern of harassment" on which a reasonable jury could find liability for outrageous conduct); Gwin v. Chesrown Chevrolet, Inc., 931 P.2d 466 passim (Colo. App. 1996) (jury's finding of liability for outrageous conduct was supported by evidence that manager used racial slurs, shouted expletives at plaintiff, and fired him); Spulak v. K Mart Corp., 664 F. Supp. 1395, 1397 (D.

Colo. 1985) (pattern of conduct involving false accusations sufficiently stated a claim for outrageous conduct).

Here, the conduct Ms. Riske alleges continued, albeit sporadically, for more than two years. In addition to the time involved, Mr. Katzenberger's managerial relationship with Ms. Riske is significant. Colorado courts have acknowledged that "'[c]onduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he has actual or apparent authority over the other . . . .'" Kirk, 674 F. Supp. at 811-12 (quoting Zalnis v. Thoroughbred Datsun Car Co., 645 P.2d 292, 294 (Colo. App. 1982)).

Mr. Katzenberger was Ms. Riske's manager when all of the relevant incidents took place. However, since the notes and deliveries were sent anonymously, Mr. Katzenberger's conduct is not an example of the classic problem where a person with authority uses power to unduly influence a subordinate. But we still consider Mr. Katzenberger's managerial position important for at least two reasons. For one thing, there is evidence that Ms. Riske suspected that Mr. Katzenberger was behind the conduct. Specifically, there was trial testimony that Ms. Riske confronted Mr. Katzenberger and directly asked him if he was "Neena." Aplt. App., Vol. IV, at 844. Although it is unclear from the record when Ms. Riske may have suspected Mr. Katzenberger's involvement, we think her suspicion is important because it would naturally affect her ability to

complain about the conduct to her only manager, Mr. Katzenberger.

Also, not all of the allegations involved anonymous conduct. Ms. Riske testified that Mr. Katzenberger stalked her, followed her around the store, and whistled at her in a "taunting manner." Aplt. App., Vol. II, at 281. Mr. Katzenberger knew that this conduct upset Ms. Riske because she confronted him more than ten times about it. Aplt. App., Vol. V, at 1049-51. Ms. Riske submitted evidence that Mr. Katzenberger also knew that the anonymous deliveries and notes were upsetting and frightening to her. Under Colorado law, "[t]here is outrageous conduct where the actor desires to inflict severe emotional distress or knows that such distress is certain or substantially certain." Zalnis, 645 P.2d at 294 (citing Restatement (Second) of Torts § 46, comment i, and Hansen v. Hansen, 608 P.2d 364 (Colo. Ct. App. 1979)).

Here, the facts would permit a jury to find that Mr. Katzenberger knew that his ongoing overt and covert conduct actually caused Ms. Riske emotional distress, even fear, over a considerable period of time. This may or may not be enough to convince a reasonable jury that the conduct went beyond a hurtful prank and is actionable as outrageous conduct. But in close cases like this, the issue should be resolved by the jury. See Grandchamp v. United Air Lines, Inc., 854 F.2d 381, 383 (10th Cir. 1988).

On the second element, that the conduct was reckless or done with the

-10-

intent of causing her severe emotional distress, Ms. Riske has also submitted evidence sufficient to withstand judgment as a matter of law. The notes indicate that the sender knew Ms. Riske was upset by the acts. The sender acknowledged that the anonymous deliveries upset her and yet continued sending notes and flowers. A reasonable jury might find that, under these facts, the conduct was reckless or done with the intent to cause Ms. Riske severe emotional distress. Ms. Riske has also submitted evidence to create a sufficient basis for a jury to find for her on the third element, that the conduct caused severe emotional distress. A reasonable jury might find, in light of the testimony from Ms. Riske, her psychiatrist, and her co-workers about the emotional changes Ms. Riske experienced, that the conduct caused her severe emotional distress.

Finally, we reject King Soopers' argument that the conduct was not sufficiently linked to Mr. Katzenberger. Mr. Katzenberger confessed. This confession, although quickly withdrawn, is sufficient to let the jury decide whether he is sufficiently linked to the alleged conduct. For these reasons, we reverse the district court's Rule 50(a)(1) dismissal of the outrageous conduct claim.

We next review the district court's denial of King Soopers' post-verdict motion for judgment as a matter of law under Fed. R. Civ. P. 50(b). We review this issue *de novo* and apply the same standards as the district court. Guides, Ltd.

v. The Yarmouth Group Prop. Mgmt, Inc., 295 F.3d 1065, 1073 (10th Cir. 2002). After construing the evidence in favor of Ms. Riske, we will affirm the district court unless the "evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Deters, 202 F.3d at 1268 (internal quotation omitted).

To succeed on her claim of sexual harassment (hostile work environment) in violation of Title VII of the Civil Rights Act of 1962, 42 U.S.C. § 2000e, Ms. Riske must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). But, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion]* . . . because of . . . sex.'" Oncale v. Sundowner Offshore Servs, Inc., 523 U.S. 75, 80 (1998) (emphasis in original) (quoting 42 U.S.C. § 2000e-2(a)(1)). "'The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" Id. (quoting Harris, 510 U.S. at 25 (GINSBURG, J., concurring)).

Applying these standards, we reverse the district court because, despite the

nature of the conduct Ms. Riske alleges, a reasonable jury could not find that it was done because of her sex. We reach this conclusion after looking at the "'general work atmosphere . . . [and the] evidence of specific hostility directed toward the plaintiff . . . .'" Penry v. Federal Home Loan Bank of Topeka, 155 F.3d 1257, 1262 (10th Cir. 1998) (quoting Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir. 1987)). We consider evidence of all conduct that is either gender-based or has "gender-related implications." Penry, 155 F.3d at 1263.

Of all the allegations Ms. Riske makes, only a few have any gender implications. The October 1998 note saying that Neena would miss her in her "tight-ass jeans" may be gender-related. Also, if a jury believed Ms. Riske's testimony that Mr. Katzenberger followed her around the store and whistled at her in a taunting manner, it might find the conduct gender-related. But even after viewing these facts and inferences in Ms. Riske's favor, and after looking at how these acts may have affected her working environment, we conclude that she has not met her burden of showing discrimination because of her sex.

Ms. Riske argues that she is entitled to a presumption of sex discrimination because "[c]onduct that is overtly sexual may be presumed to be because of the victim's gender . . . ." Id. at 1261. However, in this case, the conduct was not overtly sexual. In fact, Ms. Riske does not dispute that she told the investigator that nothing was inappropriately done to her "of a sexual nature." Aple. Supp.

-13-

App., Vol. III, at 461. In addition, Ms. Riske has not alleged that she was subjected to explicit or implicit sexual proposals or unwanted physical contact. Under these facts, we cannot apply the presumption of discrimination on the basis of sex.

Ms. Riske also argues that, independent of a presumption, her evidence showed that Mr. Katzenberger's conduct was sufficiently motivated by gender under Title VII. We disagree. In Penry, we addressed the burden of proving discrimination because of sex, and we affirmed summary judgment for defendants whose alleged conduct had far greater gender implications than we have here. See 155 F.3d 1257. There were two plaintiffs in Penry. One was subjected to "four specific acts of unwanted physical contact" that were due to her gender, other periodic touching, and a comment that one of the female assistants "allowed [a male co-worker] to get in her drawers anytime." Id. at 1260-61. This plaintiff was also taken by a co-worker "to dine at Hooters, a restaurant whose marketing theme is based on its well-endowed female waiting staff." Id. at 1260. The other plaintiff was subjected to four gender-related comments (being asked if women have wet dreams, being told that he liked her bra strap showing, being asked "what she was wearing under her dress," and hearing the above "in her drawers" comment). Id. at 1262. In addition, a co-worker commented to both plaintiffs about "the roof of a particular mall [being] shaped like a woman's breasts." Id. at

-14-

1260. After considering this evidence, we held that the conduct in Penry was not sufficiently motivated by gender to warrant liability for sexual harassment under Title VII. Id. at 1263. The conduct in Penry was more linked to the plaintiffs' sex than the conduct here, since it included unwanted physical touching and comments that were specifically sexual or gender-related. Therefore, although Ms. Riske submitted evidence that she was subjected to a scheme of frightening notes and conduct, her evidence that this conduct was motivated by her sex falls short of our Penry standard.

Ms. Riske also contends that she established discrimination because of sex by submitting evidence that Mr. Katzenberger had a general hostility toward women and that he treated women differently than men. However, Ms. Riske's argument is not adequately supported by the record. In particular, Ms. Riske argues on appeal that two of her co-workers testified that Mr. Katzenberger treated women differently than men. However, the trial transcript reflects that one of these co-workers testified that Mr. Katzenberger treated women "pretty coldly, the same as everyone else." Aplt. App., Vol. IV, at 892.

The other co-worker testified that although she "had this feeling" that Mr. Katzenberger did not treat men and women alike, she did not see any disparate treatment. Id. at 802. Although Ms. Riske points to this co-worker's testimony that when she said good morning to Mr. Katzenberger he responded with a "really

weird look," this testimony adds nothing substantial. Id. Ms. Riske's other contentions about general hostility toward women are even more minor, such as an allegation that Mr. Katzenberger told a female employee that her hair was shorter than his. Aplt. Third Br. at 3. This evidence does not support a reasonable finding that Mr. Katzenberger had a general hostility toward women or that he treated men and women differently for Title VII purposes.

Taken as a whole, Ms. Riske has not submitted evidence that in her work environment "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Harris, 510 U.S. at 25 (GINSBURG, J., concurring). Therefore, although we acknowledge the offensiveness of Ms. Riske's allegations in this case, "[i]f the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment." Stahl v. Sun Microsystems, Inc., 19 F.3d 533, 538 (10th Cir. 1994).

For these reasons, King Soopers is entitled to a Rule 50(b) judgment as a matter of law on the Title VII claim. In light of this judgment, we need not address whether King Soopers met its burden of reasonable care under Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998), or whether the jury properly awarded punitive damages on the Title VII claim.

**REVERSED** and **REMANDED** for a new trial on Ms. Riske's outrageous conduct claim against Mr. Katzenberger and for entry of judgment in favor of King Soopers on the Title VII claim.[2]

---

[2] Appellant's Motion for Leave to File Sur-Reply, Revised Motion for Leave to File Sur-Reply, Motion for Leave to File Second Supplemental Appendix and Revised Motion for Leave to File Second Supplemental Appendix are GRANTED.