24CA0047 Oberstar v PRCP – CO 11-07-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0047
Larimer County District Court No. 23CV149
Honorable Joseph D. Findley, Judge

Michelle M. Oberstar,

Plaintiff-Appellant,

v.

PRCP – CO Governor's Park LLC, a Delaware limited liability company,

Defendant-Appellee.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE YUN
Harris and Graham*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 7, 2024

Michelle M. Oberstar, Pro Se

Jachimiak Peterson Kummer, LLC, Wes P. Wollenweber, Taylor A. Clapp,
Lakewood, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1 In this landlord-tenant dispute, the plaintiff, Michelle M. Oberstar, appeals the damages awarded by the district court following an entry of default in her favor. We affirm the court's rulings on economic damages, punitive damages, and Oberstar's motion for reconsideration. But we reverse its ruling declining to award noneconomic damages, and we remand the case to the district court to determine and award Oberstar's noneconomic damages.

## I. Background

¶ 2 At the uncontested damages hearing, Oberstar testified as follows. In May 2020, she and her young daughter moved into an apartment owned and managed by the defendant, PRCP – CO Governor's Park LLC (the landlord). Four months later, new tenants moved into the apartment above theirs. The upstairs tenants were very noisy at night and had frequent screaming fights, resulting in repeated calls to the police from Oberstar, other neighbors in the building, and the upstairs tenants themselves. Oberstar complained to the landlord "on numerous occasions" about the disturbances. She also let the landlord know that she was a domestic violence survivor and that the loud arguments and

police presence were severely exacerbating her anxiety and post-traumatic stress disorder. But the landlord took no action.

¶ 3 The upstairs tenants then began breeding rabbits in their apartment. They housed the rabbits on their patio, which was directly above Oberstar's patio. Rabbit feces fell onto Oberstar's patio, contaminating her belongings and rendering her patio unusable. Eventually, the smell from the rabbits was so bad that Oberstar and her daughter could not use their kitchen, living room, or dining room. To avoid the stench, they were "pretty much confined to [their] back bedrooms and the bathroom." Oberstar asked the landlord to address the situation, but the landlord did not do so until August 2022, when the upstairs tenants were evicted. When the upstairs tenants moved out, they left the rabbits behind. Oberstar could hear them "jumping around" and asked the landlord to deal with the abandoned rabbits, but the landlord did not do so. Eventually, law enforcement officers entered the upstairs apartment and found the rabbits dead. Oberstar and her daughter moved out in October 2022.

¶ 4 In April 2023, Oberstar filed suit against the landlord, alleging five claims: breach of contract, breach of the implied warranty of

habitability, breach of the implied covenant of quiet enjoyment, constructive eviction, and extreme and outrageous conduct. She requested the following damages:

- economic damages for the loss of the personal property on her patio that was contaminated with feces, the loss of use of a portion of her apartment due to the smell, the cost of extra daycare hours for her daughter to limit her exposure to the upstairs tenants' arguments, and the cost of a security system;

- noneconomic damages for her mental pain and suffering, annoyance, discomfort, and inconvenience; and

- punitive damages for the landlord's willful and wanton conduct.

This complaint was properly served on the landlord.

¶ 5    When the landlord did not respond to the complaint or otherwise defend against the lawsuit, the clerk of the court entered a default in Oberstar's favor and the district court set the matter for a hearing on damages. At the hearing, Oberstar testified to the events described above. The landlord was served with notice of the hearing but did not participate.

¶ 6    After the hearing, the court entered an order awarding
Oberstar a total of $5,635 in economic damages — $3,500 to
replace her contaminated personal property and $2,135 for the loss
of use of a portion of her apartment — and declining to award her
punitive or noneconomic damages.  Oberstar moved for
reconsideration, and the court denied her motion.

¶ 7    Oberstar now appeals the award of damages.

## II.    Analysis

¶ 8    Oberstar contends that the district court erred by (1) declining
to award her certain economic damages; (2) declining to award her
any punitive damages; (3) declining to award her any noneconomic
damages; and (4) denying her motion for reconsideration.  After
setting forth the standard of review, we address each contention in
turn.

### A.    Governing Law and Standard of Review

¶ 9    An "entry of default" accepts the complaint's allegations and
establishes the defendant's liability, but it does not establish
damages.  *Dickinson v. Lincoln Bldg. Corp.*, 2015 COA 170M,
¶¶ 22-23.  As a result, a district court ordinarily conducts a
damages hearing following the entry of default.  *Kwik Way Stores,*

*Inc. v. Caldwell*, 745 P.2d 672, 679 (Colo. 1987). But "[a] damages hearing is only held to determine the amount of damages owed, and any discussion of the liability underlying that award is prohibited." *Dickinson*, ¶ 28.

¶ 10 In this case, the district court's damages hearing was a bench trial. "We review a judgment following a bench trial as a mixed question of fact and law." *Premier Members Fed. Credit Union v. Block*, 2013 COA 128, ¶ 27. "It is the province of the trial court to assess the reliability of the evidence and credibility of witnesses," *Lawry v. Palm*, 192 P.3d 550, 560 (Colo. App. 2008), and we will disturb the court's factual findings "only if they are clearly erroneous and not supported by the record," *id.* at 558. But "we review the court's conclusions of law de novo." *Premier Members*, ¶ 27.

## B. Economic Damages

¶ 11 Oberstar contends that the district court erred by finding that she was deprived of the use of a portion of her apartment for only five months and that there was "a lack of nexus between the wrongdoing of the defendant" and the expenses she incurred for extra daycare hours and a security system. We are not persuaded.

¶ 12      As to Oberstar's loss of use of a portion of her apartment due to the smell from the rabbits, the court agreed with her calculation of damages at $427 per month — that is, the difference between the rent for a two-bedroom apartment (what she was paying for) and a studio apartment (what she functionally had).  But while Oberstar claimed twenty-four months of damages, the court found that she was deprived of the use of a portion of her apartment for only five months, from June to October of 2022.

¶ 13      The record supports the court's finding.  Oberstar's testimony was unclear about when the smell from the rabbits rendered a portion of her apartment unusable.  But she testified that she "was actively looking for another place to live" in June 2022, and, as the court noted, she mentioned the rabbits in an email to the landlord in August 2022.  Because the evidence supports it, we cannot conclude that the district court's finding that the smell first rendered a portion of Oberstar's home unusable in June 2022 is clearly erroneous.

¶ 14      As to Oberstar's expenses for extra daycare hours and a security system, the court found that these expenses were not sufficiently connected to the landlord's failure to address the

upstairs tenants' domestic disturbances. Again, the record supports the court's findings. While Oberstar testified that the disturbances occurred mostly at night, the extra daycare hours were during the day. And Oberstar did not testify to any threats from the upstairs tenants to her or her daughter's physical safety.

¶ 15 Because the district court's factual findings regarding economic damages are not clearly erroneous, we will not disturb them on appeal.

## C. Punitive Damages

¶ 16 Oberstar contends that the district court erred by declining to award her any punitive damages. We again disagree.

¶ 17 "In Colorado, exemplary damages are only available by statute." *Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1081 (Colo. 2011). Before the fact finder may impose punitive damages, it must determine that the "injury complained of" was "attended by circumstances of fraud, malice, or willful and wanton conduct," § 13-21-102(1)(a), C.R.S. 2024, which must be proved beyond a reasonable doubt, § 13-25-127(2), C.R.S. 2024. Willful and wanton conduct is defined as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and

7

recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." § 13-21-102(1)(b).

¶ 18     The district court found that Oberstar had not presented evidence of willful or wanton conduct sufficient to impose punitive damages. Because the only evidence she presented was that the landlord did not respond quickly or effectively to her concerns, we cannot say that she proved beyond a reasonable doubt that the landlord's conduct was willful and wanton. We thus cannot conclude that the court's finding is clearly erroneous.

### D.     Noneconomic Damages

¶ 19     Oberstar contends that the district court erred by declining to award her any noneconomic damages. Specifically, the court stated that noneconomic damages "are only available for willful and [wanton] conduct." Because we conclude that the district court misconstrued the law as to Oberstar's claims for (1) breach of the implied warranty of habitability and (2) extreme and outrageous conduct, we reverse the court's ruling on noneconomic damages.

#### 1.     Breach of the Implied Warranty of Habitability

¶ 20     As the district court noted, noneconomic damages are available in breach of contract actions at common law "in

extraordinary contractual circumstances where such damages are foreseeable at the time of contracting and the breaching party's conduct was willful and wanton." *Carothers v. Archuleta Cnty. Sheriff*, 159 P.3d 647, 657 (Colo. App. 2006) (citing *Giampapa v. Am. Fam. Mut. Ins. Co.*, 64 P.3d 230 (Colo. 2003)). But Oberstar's claim for breach of the implied warranty of habitability is governed by statute. *See* §§ 38-12-501 to -512, C.R.S. 2021. Under section 38-12-507(1)(d), C.R.S. 2021, "a tenant may recover damages directly arising from a breach of the warranty of habitability." Although the statute does not define "damages," the ordinary dictionary meaning of "damages" includes noneconomic damages. *See* Black's Law Dictionary 488 (11th ed. 2019) (defining "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"); New Oxford American Dictionary 436 (3d ed. 2010) (defining "damages" as "a sum of money claimed or awarded in compensation for a loss or an injury"); *see also Gorsich v. Double B Trading Co.*, 893 P.2d 1357, 1363 (Colo. App. 1994) (interpreting the term "actual damages" in the Rights in Stolen Property statute, § 18-4-405, C.R.S. 2024, to "include non-economic damages as well as economic damages").

¶ 21     Thus, because Oberstar obtained an entry of default on her claim for breach of the implied warranty of habitability, she was entitled to recover damages, including noneconomic damages. *See Dickinson*, ¶ 28 (because an entry of default fully establishes a defaulting party's liability, a damages hearing is held only to determine the amount of damages owed). Contrary to the district court's statement, no additional showing of willful and wanton conduct was required.

### 2.     Extreme and Outrageous Conduct

¶ 22     Oberstar was also entitled to recover noneconomic damages on her claim for extreme and outrageous conduct because it was not a contract claim. Rather, the elements of a claim for extreme and outrageous conduct are that (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant did so recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused the plaintiff severe emotional distress. *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002), *aff'd*, 90 P.3d 228 (Colo. 2004).

¶ 23     When a party fails to plead or otherwise defend against a lawsuit, "the clerk shall enter [the party's] default." C.R.C.P. 55(a).

10

As noted above, a default under Rule 55(a) fully establishes a defaulting party's liability. *Dickinson*, ¶ 21. Thus, while the district court could find that Oberstar had not proved willful and wanton conduct beyond a reasonable doubt for the purpose of awarding punitive damages,[1] *see Valdez v. Sams*, 307 P.2d 189, 190-91 (Colo. 1957) (Rule 55(b) allows the court to take evidence to determine punitive damages), it lacked discretion to find that the landlord was not liable for extreme and outrageous conduct.

¶ 24     Rather, the court's role was to determine her actual damages, including noneconomic damages, under that claim. *See* CJI-Civ. 23:6 (instructing the fact finder to "determine the total dollar amount of plaintiff's damages, if any, that were caused by the extreme and outrageous conduct of the defendant," including "any noneconomic losses or injuries" such as "physical and mental pain and suffering, inconvenience, emotional stress, fear, anxiety, . . .

---

[1] A claim for punitive damages is not a separate and distinct cause of action; rather, it is auxiliary to an underlying claim for actual damages. *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 213 (Colo. 1984). "Section 13-21-102 thus permits an award for punitive damages only in conjunction with an underlying and independent 'civil action' in which actual damages are assessed for some legal wrong to the injured party." *Id.*

11

[and] impairment of the quality of life"); *Palmer v. Diaz,* 214 P.3d 546, 552 (Colo. App. 2009) (upholding the jury's noneconomic damages award on the outrageous conduct claim). As with Oberstar's claim for breach of the warranty of habitability, no additional showing of willful and wanton conduct was required.

¶ 25    We thus conclude that the district court erred as a matter of law by concluding that it could not award Oberstar noneconomic damages absent a showing of willful and wanton conduct.

### E.    Motion to Reconsider

¶ 26    Oberstar contends that the district court erred by denying her motion to reconsider the judgment based on what she characterized as "newly discovered evidence" — namely, additional correspondence between herself and the landlord, documentation of her seeking legal advice, and an additional record of police calls related to the upstairs tenants' domestic disturbances. However, as the court correctly noted, newly discovered evidence is that which the party "could not, with reasonable diligence, have discovered and produced at the trial." *Se. Colo. Water Conservancy Dist. v. O'Neill,* 817 P.2d 500, 505 (Colo. 1991) (quoting C.R.C.P. 59(d)(4)). Because all the evidence Oberstar submitted with her motion for

reconsideration was available to her at the time of the damages hearing, the district court did not err by denying the motion.

## III.    Disposition

¶ 27    The district court's rulings on economic damages, punitive damages, and Oberstar's motion for reconsideration are affirmed. Its ruling on noneconomic damages is reversed, and the case is remanded for the district court to determine and award Oberstar's noneconomic damages.

JUDGE HARRIS and JUDGE GRAHAM concur.