FILED
United States Court of Appeals
Tenth Circuit

March 20, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MARCO CARANI; SHELLEY
DEMARIE CARANI,

     Plaintiffs - Appellants,

v.

DARREL MEISNER; J.R. BOULTON;
SAMUEL STEWART; KIRK
WILSON; JOHN HIER; WANDA
NELSON; ERIN SIMS; WILLIAM
SAPPINGTON; LOU VALLARIO;
SCOTT DAWSON,

     Defendants - Appellees.

No. 10-1398
(D.C. No. 1:08-CV-02626-MSK-CBS)
(D. Colo.)

---

MARCO CARANI; SHELLEY
DEMARIE CARANI,

     Plaintiffs - Appellants,

v.

DARREL MEISNER; J.R. BOULTON;
SAMUEL STEWART; KIRK
WILSON; JOHN HIER; WANDA
NELSON; ERIN SIMS; WILLIAM
SAPPINGTON; LOU VALLARIO;
SCOTT DAWSON,

     Defendants - Appellees.

No. 11-1156
(D.C. No. 1:08-CV-02626-MSK-CBS)
(D. Colo.)

MARCO CARANI; SHELLEY
DEMARIE CARANI,

 Plaintiffs - Appellees,

v.

DARREL MEISNER; J.R. BOULTON;
SAMUEL STEWART; KIRK
WILSON; JOHN HIER; WANDA
NELSON; WILLIAM SAPPINGTON,

 Defendants - Appellants,

and

LOU VALLARIO; SCOTT DAWSON,

 Defendants.

No. 12-1092
(D.C. No. 1:08-CV-02626-MSK-CBS)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ, BALDOCK,** and **GORSUCH**, Circuit Judges.

---

 Back in 2007, Marco and Shelley Carani's private marital dispute briefly spilled out onto the streets of Rifle, Colorado. The events of those few days have since managed to beget years of federal litigation. Today, we hopefully bring some measure of closure for all involved.

---

 [*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

When Mr. Carani announced he wanted a divorce, he and his wife first moved into separate rooms. Later, they attempted a reconciliation. The couple's private marital issues, however, soon exploded in public when Ms. Carani found a flirtatious note from Erin Sims in Mr. Carani's truck. Deducing that her husband was carrying on an affair with Ms. Sims, Ms. Carani picked up the phone, called Ms. Sims, and threatened to ruin Ms. Sims, ruin her own marriage, and ruin her relationships around town. To avoid any conceivable misunderstanding, Ms. Carani told Ms. Sims to "consider this a threat."

Ms. Carani then proceeded to make good on that threat. She called Ms. Sims's husband, told him of the affair, and asked if she should be tested for sexually transmitted diseases. She called Ms. Sims's boss and let him know about the affair, too. And she told many other friends around town, some of whom proceeded (with her knowledge and apparent approval) to leave a message with the word "SLUT" on Ms. Sims's car when it was parked on the street and shout "home wrecker" when they saw her in public.

When Ms. Sims complained to police about Ms. Carani's threats and expressed her belief that Ms. Carani was responsible for the acts of public shaming (she didn't see who did these things), the police became concerned that events inside the Carani household were rapidly escalating outside it. They asked Ms. Carani to visit the police station and provide a handwriting sample. Eventually convinced she was behind the note, the public taunts, and knowing she

had threatened Ms. Sims and called her husband and boss, the police arrested her for stalking with a domestic violence sentencing enhancement. Because she was arrested on a Friday afternoon, Ms. Carani had to wait until Monday morning for an arraignment. In the meantime, law enforcement sought and received an arrest warrant signed by a state judge who found probable cause for the arrest and authorized Ms. Carani's continued detention. But some time after her arraignment (when she was released on bond), local authorities thought tempers had cooled enough and they decided to drop the charges and let the matter rest.

But rest it did not. Ms. Carani responded with a lawsuit charging Ms. Sims, several police officers, and various other Rifle public employees, including the mayor and town clerk, with violating her rights under the United States Constitution and state law. Nor was this all. Now apparently reconciled once more with his wife, Mr. Carani sued his former mistress alleging that she and the other defendants should somehow pay for causing him "lost consortium."

After a great many proceedings and detailed opinions spanning over 50 pages, the district court dismissed the charges against Ms. Sims, granted the rest of the defendants summary judgment, and awarded attorneys fees to the defendants. Ms. Carani contests virtually all of these dispositions but in the end we discern no reversible error.

Ms. Carani begins by arguing that the district court erred in granting summary judgment to various members of the Rifle police department on her

constitutionally based false arrest and false imprisonment claims. But she doesn't dispute that the officers were entitled to assert qualified immunity with respect to these claims. And she acknowledges that, to overcome that assertion of immunity, she bears the burden of showing their conduct was not just illegal but *clearly* illegal at the time. All this, of course, is well and long settled: once a law enforcement agent asserts qualified immunity the plaintiff must come forward and show "a reasonable law enforcement officer would have known that his or her challenged conduct was illegal" at the time of the incident. *Martinez v. Carr*, 479 F.3d 1292, 1294-95 (10th Cir. 2007).

This burden, however, Ms. Carani fails to carry. The officers thought probable cause existed to support Ms. Carani's arrest and detention. They later received the endorsement of a county judge who approved an arrest warrant. Yet in reply Ms. Carani identifies no clearly established law suggesting probable cause was lacking.

To be sure, Ms. Carani cites *Baptiste v. J.C. Penney Co., Inc.*, 147 F.3d 1252 (10th Cir. 1998), and claims it wins the case for her. But there we denied qualified immunity to an officer who arrested the plaintiff for shoplifting after he viewed a videotape showing she did no such thing. In our case, meanwhile, the arresting officers did not ignore exculpatory evidence in their possession. Ms. Carani argues that, had the officers done a little more pre-arrest investigative work, they would've learned her friends, not Ms. Carani herself, wrote the note

placed on Ms. Sims's car and did the yelling on the street.  But there's no indication that the officers knew these facts at the time of the arrest the way the officer in *Baptiste* knew the exculpatory facts about the putative shoplifter.  Neither is it clear, for that matter, how exculpatory the facts in this case really are.  After all, Ms. Carani wasn't wholly uninvolved in her friends' actions:  she instigated them.  In these circumstances, we simply cannot say *Baptiste* clearly forewarned the officers in this case that their conduct was unlawful.

Given that Ms. Carani raises no other argument against the application of qualified immunity, the district court was right to enter judgment for the Rifle police defendants.  Whether other problems might also attend Ms. Carani's suit against them (the district court identified many other problems it saw), we have no need to explore.  This problem is problem enough.  Likewise, Ms. Carani's challenge to the district court's exclusion of her expert evidence is now beside the point:  with or without that evidence she cannot overcome qualified immunity as a matter of law.  (Though were we to reach the merits of that particular question we would find no abuse of discretion:  some of the expert's rejected opinions were facts he lacked personal knowledge of; others amounted to the sort of impermissible legal opinions barred by *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988) (en banc)).

That leaves the Caranis with their claims against Ms. Sims.  In her complaint, Ms. Carani alleged that Ms. Sims engaged in the state tort of "wanton

and willful" conduct. Problem is, the district court held, "wanton and willful" conduct is not an independent tort under state law: only and instead a necessary element of proof to overcome immunity granted state employees by the Colorado Governmental Immunities Act. By failing to contest this holding in her appellate briefs, Ms. Carani has waived the issue.

Of course, Ms. Carani's complaint *also* separately alleged that Ms. Sims engaged in "extreme and outrageous" conduct and false imprisonment and, as it turns out, Colorado *does* recognize "extreme and outrageous" conduct as an independent tort. But to avoid a motion to dismiss, Colorado requires a plaintiff pursuing this claim to plead facts suggesting that the defendant's actions exceeded "all possible bounds of decency, and [can be] regarded as atrocious, and utterly intolerable in a civilized community." *Riske v. King Soopers*, 366 F.3d 1085, 1089 (10th Cir. 2004) (quotation marks omitted) (interpreting Colorado law). The district court held that Ms. Carani's complaint failed to identify facts suggesting so much, and in this as well it was surely right. The complaint faulted Ms. Sims for filing a police report blaming Ms. Carani for the note and shouting when it was Ms. Carani's friends who were immediately responsible for those acts. But as we've seen, Ms. Carani instigated those actions, at the time of her complaint to police there's no suggestion Ms. Sims had reason to suspect anyone other than Ms. Carani, and Ms. Sims's inference that Ms. Carani was responsible was perfectly natural given Ms. Carani's promise to "ruin" her. Certainly it can't

be the case that a member of the public who mistakenly represents a fact to law enforcement necessarily engages in tortious conduct, even when she acts in good faith and with some factual foundation for her belief. Like the district court, we fail to see how Ms. Carani's allegations suffice to state a claim for either "extreme and outrageous" conduct or false imprisonment and Ms. Carani cites no authority suggesting they do.

The final merits question for us to resolve concerns Mr. Carani's appeal of the dismissal of his own curious claim against the defendants. Whatever other difficulties he might face in his effort to win damages from his former mistress (and others) for "lost consortium" with his wife, his claim surely fails for the simple reason that it is derivative in nature: without any other remaining viable claim remaining in the case, under Colorado law it must fall too. *See Schwindt v. Hershey Foods Corp.*, 81 P.3d 1144, 1148 (Colo. App. 2003).

That brings us to the parties' extensive collateral fight over attorneys fees. The district court awarded fees to Ms. Sims and various other defendants like the mayor and town clerk under Colo. Rev. Stat. § 24-10-110(5)(c); the court also awarded fees to the Rifle police defendants under that same statute as well as 42 U.S.C. § 1988.

For their part, the Caranis argue that the district court lacked jurisdiction to decide the fee motions because they filed their appeal before the district court could get around to deciding the fee issues. Their appeal, they say, rendered the

district court without authority to proceed. But the Caranis overlook long-settled law that a district court may retain jurisdiction over collateral fee disputes even after its merits judgment has departed for the court of appeals. *See McKissick v. Yuen*, 618 F.3d 1177, 1196 (10th Cir. 2010); *Budinich v. Bection Dickinson & Co.*, 486 U.S. 196, 202 (1988).

Alternatively, the Caranis argue that the district court improperly awarded fees under the state statute because it failed to make a finding that their claims were frivolous. Such a finding was of course necessary — and was made by the district court — with respect to the § 1988 award and that finding isn't challenged on appeal. Instead, the Caranis complain only about the absence of a parallel frivolousness finding in connection with the fee award under state law.

This complaint, too, is without foundation. Even assuming the court's § 1988 frivolous finding doesn't carry over to the state law fee award, one does not appear necessary to sustain a fee award under the plain terms of Colo. Rev. Stat § 24-10-110(5)(c), and the Caranis provide no authority for their assertion otherwise. Neither do they challenge the state law fee award on any other basis. (One thing the state fee shifting statute *does* require is proof that the defendant receiving a fee award serves as a public employee. Apparently Ms. Sims is a public employee and it is for this reason the district court thought her entitled to fees. It's unclear, however, whether she was acting in a public capacity at any point relevant to this lawsuit and whether the statute affords fees to public

employees acting in their private capacities. Still, the Caranis haven't sought to challenge the fee award on this basis so we have no obligation to address the question in this case and we believe it prudent and equitable to leave its resolution for another day.)

Even that, however, isn't the end of the parties' fee fight. Various of the defendants cross-appeal the district court's denial of their motion to amend the judgment to assess their fee award against not only the Caranis but the Caranis' counsel (a motion apparently aimed at making collection easier). The district court denied the motion because the defendants sought review under Fed. R. Civ. P. 59(e), yet failed to satisfy any of the three prongs making relief available: there was no intervening change in the controlling law, no newly-discovered evidence that just became available, and no need to modify the ruling to correct clear error or prevent manifest injustice. We see no error in this disposition. Not to be outdone, the Caranis respond with a motion of their own in this court, seeking attorneys fees and double costs for themselves under Federal Rule of Appellate Procedure 38 claiming that the defendants' Rule 59(e) motion was itself frivolous. We deny that motion as well.

The district court gave this long-lived litigation ample process and thorough consideration.  Its judgment is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge